IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICHARD H. GOLDSTEIN,
20 Fleischmann Lane
Glenbrook, NV 89413,[1]

      Plaintiff,

v.

INTERNAL REVENUE SERVICE,
1111 Constitution Avenue, NW
Washington, D.C. 20224,

      Defendant.

## COMPLAINT

This is an action brought by Plaintiff, Richard H. Goldstein, under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), as well as the Privacy Act of 1974, 5 U.S.C. § 552a et.seq., seeking the release of records from the Internal Revenue Service, a component part of the Department of the Treasury (hereafter "IRS"). As grounds therefore, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. § 552a(g)(1), and 28 U.S.C. § 1331.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B), and 5 U.S.C. § 552a(g)(5).

## PARTIES

3. Plaintiff Richard H. Goldstein is private citizen residing in Glenbrook, Nevada, and is the son of Samuel Goldstein, a prominent philanthropist who parlayed a small oil trading

---

[1] The mailing address for the Plaintiff is PO Box 1627, Zephyr Cove, NV 89448-1627 as USPS does not recognize the aforementioned address for its purposes.

company into a multibillion-dollar empire, prior to his death on June 21, 2000, at the age of 82.

4. Defendant IRS is a component of the Department of the Treasury and therefore, an agency of the United States Government within the meaning of 5 U.S.C. § 552(f)(1). Defendant IRS is headquartered at 1111 Constitution Avenue, NW, Washington, D.C. 20224.As a component of the Department of the Treasury, Defendant IRS is an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1) and 5 U.S.C. § 552a(a)(1), having a separately designated FOIA disclosure office.

5. Defendant IRS has possession, custody and control of records to which Plaintiff seeks access, except as to any records Defendant IRS has transferred to the Treasury Inspector General for Tax Administration, also a component of the Department of the Treasury (hereinafter "TIGTA") incident to a now completed investigation conducted by TIGTA into the conduct of certain local IRS officials in Missouri. On information and belief, that investigation was initiated by the IRS Whistleblower Office, in recognition of Plaintiff's federally protected rights, and evidences an investigation into the factual details such as the time, place, manner, and location of the whistleblowing submissions made to certain employees with the local IRS office by Plaintiff's attorney, David V. Capes, with the law firm, Capes, Sokol, Goodman &Sarachan, P.C. (hereafter referred to as "Attorney Capes").

## STATEMENT OF FACTS

**Plaintiff's Federally Protected Whistleblowing Rights**

6. Commencing in January, 2012, the IRS, by and through its Whistleblower Office's review of a "re-submission" of certain information and the assignment by that office of certain claim numbers 2012-000368 and 2012-000372 to Plaintiff, *knew* of a written request by Plaintiff for copies of documentation submitted on his behalf to the IRS, arising from whistleblowing

activities and therefore, Plaintiff's rights, privileges, or benefits under the Tax Relief and Health Care Act of 2006 (26 U.S.C. § 7623).

**Plaintiff's Request For "Estate" Records From The IRS**

7. On July 19, 2013, Plaintiff sent a detailed FOIA request to Defendant seeking access to certain agency records that related to his status as an heir of his father, Samuel R. Goldstein (date of death, June 22, 2000), that included therein, a presentation of documentation showing Plaintiff's material interest in his father's estate, and requesting the following:

(1) The entire Examination Division Administrative File for the <u>estate tax audit</u> conducted by the IRS of the above referenced Estate of Samuel R. Goldstein, and all papers and dividers included therein, including but not limited to all documents, reports, revenue agent work papers, notes, investigative histories, Revenue Agent work logs, schedules, reports of interviews, memoranda of interviews, information received from third parties, memoranda, telephone call slips, or notes and all other similar type papers prepared or accumulated relative to the examination which for any reason are otherwise included in the administrative file, including but not limited to, any and all closing agreements or adjustments made to the estate tax return, and documentation pertaining to any protective 754 election filed or presented to the IRS.

(2) The estate tax return (Form 706) filed for the Estate of Samuel R. Goldstein (TIN: XX-XXXXXXX), comprised of the tax return, information returns, supporting schedules to the return, attachments, or lists which are supplemental to, or part of, the foregoing, as well as any and all return information, not otherwise produced as part of the preceding request, and any amendment or supplement with respect thereto.

(3) Any and all fiduciary income returns (Form 1041) filed for the Estate of Samuel R. Goldstein (TIN: XX-XXXXXXX), for the years inclusive of 2000 to 2006, comprised of the tax returns, information returns, declaration of estimated tax, any claims for refund, any amendments or supplements of the foregoing, and any and all supporting schedules, attachments, or lists which are supplemental to, or part of,

        the foregoing, and to the extent permitted by law, any and all K-1s issued incident to these tax returns.

(4) Any and all fiduciary income returns (Form 1041) filed for <u>Samuel R. Goldstein Living Trust Dtd. May 18, 1984</u> (TIN: XX-XXXXXXX), for the years inclusive of 2000 to 2006, comprised of the tax returns, information returns, declaration of estimated tax, any claims for refund, any amendments or supplements of the foregoing, and any and all supporting schedules, attachments, or lists which are supplemental to, or part of, the foregoing, and to the extent permitted by law, any and all K-1s issued incident to these tax returns.

(5) Any <u>income tax audits</u> conducted, either pursuant to TEFRA or otherwise of the above referenced heirs, successors, or other such beneficiaries to the Estate, inclusive of the above referenced so-called FLP, ***SRG Investment Limited Partnership***, (TIN XX-XXXXXXX), by and through the identified Tax Matters Partner, the Samuel R. Goldstein Living Trust Dtd. May 18, 1984, as amended, by and through Carol G. Jones, Trustee, and all papers and dividers included therein, including but not limited to all documents, reports, revenue agent work papers, notes, investigative histories, Revenue Agent work logs, schedules, reports of interviews, memoranda of interviews, information received from third parties, memoranda, telephone call slips, or notes and all other similar type papers prepared or accumulated relative to the examination which for any reason are otherwise included in the administrative file, or which specifically pertain to any protective 754 election purportedly made with respect to the same.

(6) Omitted

(7) Any and all Federal partnership tax returns (Form 1065) filed with respect to the ***SRG Investment Limited Partnership,***(TIN XX-XXXXXXX), for the years, 2000 through 2006, comprised of the tax returns filed with respect to each year, information returns, declaration of estimated tax, any claims for refund, any amendments or supplements of the foregoing, and any and all supporting schedules, attachments, or lists which are supplemental to, or part of, the foregoing, and to the extent permitted, any and all K-1s.

(8) Any and all papers and dividers included therein, including but not limited to all documents, reports, revenue agent work

papers, notes, investigative histories, Revenue Agent or Special Agent work logs, schedules, reports of interviews, memoranda of interviews, information received from third parties, memoranda, telephone call slips, or notes and all other similar type papers prepared or accumulated <u>relative to any and all submissions made by an attorney (attorney David Capes)</u>, to any of the persons working in the St. Louis area for the Department of the Treasury or otherwise, for the IRS, at any time between 2004 to 2010, who specifically received information or documentation regarding possible civil and criminal tax fraud involving the various entities referenced and certain individuals associated with the identified estate and trust, with respect to which Richard Goldstein maintains a material interest, including, but not limited to, the trust administered by Bank of America, N.A.:

> Timothy J. Driscoll, Criminal Tax Counsel
> Mark Hammond, Special Agent
> Scott French, Special Agent
> Department of the Treasury
> Internal Revenue Service
> 1222 Spruce Street, Room 6.301A
> St. Louis, MO 63103

(9) Any and all papers and dividers included therein, including but not limited to all documents, reports, revenue agent work papers, notes, investigative histories, Revenue Agent or Special Agent work logs, schedules, reports of interviews, memoranda of interviews, information received from third parties, memoranda, telephone call slips, or notes and all other similar type papers prepared or accumulated <u>relative to any audits conducted of Bank of America, N.A., and its use of particular hedge funds, whether in the form of its participation in a STARS, or other "reportable transaction," a foreign tax credit generator under audit by the IRS, or otherwise, specific to the filing of IRS Forms 8886, describing WASH/CONSTRUCTIVE SALE/STRADDLES</u>, first utilized in 2009 relative to the following funds:

- BA Credit Equity Class D Unrestricted
- BA Credit Opportunities Hedge (XX-XXXXXXX)
- Columbia Management Hedge Fund LLC
- BA Strategic Value Restructuring Fund, LP (XX-XXXXX)

- BA Strategic Value Restructuring Fund (Onshore) Holdings, LLC
- SVFR (Onshore) Holdings (XX-XXXXXXX)
- BA Hedge Fund Direct LP Renaissance Inst's Equities Fund
- BA Emerging Market Fund Class D Restricted
- BA International Hedged Equity Class D Restricted

With regard to any of the above referenced entities or funds, please provide further, any and all tax returns, tax return information, which are required to be produced to any member of a partnership, it being understood that one of the members identified as having a financial interest therein is the trust, <u>SUC TUA S GOLDSTIEN FB RICHARD xx-xxxxxxxxxxx</u> (TIN: XX-XXXXXXX), and incident thereto, correspondence, notes, and other documents in the possession of the IRS regarding any assessments made as against Bank of America or other person making use of such funds, correspondence, notes, workpapers and other memoranda including history sheets of the Revenue Officer relating to the assessment and collection of taxes with respect to the same.

(10) With regard to each and all of the above referenced funds who are represented in the IRS Forms 8886 disclosures made to the IRS by Bank of America, N.A., with respect to <u>SUC TUA S GOLDSTIEN FB RICHARD xx-xxxxxxxx</u> (TIN: XX-XXXXXXX), <u>any and all K-1s issued to SUC TUA S GOLDSTIEN FB RICHARD XX-xxxxxxxxxxx</u> (TIN: XX-XXXXXXX), for any of the years, 2005 through 2012.

***A copy of Plaintiff's FOIA request is attached hereto as Exhibit "1."***

8. The scope of this request included a request for all of the estate-related tax returns filed with respect to the estate plan devised by an attorney, Albert S. Rose (hereafter "Attorney Rose"), now with Lewis Rice &Fingersh, L.C., inclusive of agency records that pertained to an IRS estate tax audit conducted of Samuel R. Goldstein's estate in 2001-2003 (as handled by Attorney Rose), which focused primarily on the validity of a death-bed family limited partnership set up just prior to Mr. Goldstein's death (hereafter "FLP"), as well as the purported making by

Attorney Rose of a "protective 754 election" made with respect to the FLP income tax returns filed with the IRS, the propriety of a "final" income tax return filed for the FLP for 2005, and the conduct of a fiduciary, Bank of America and its trust department (hereafter "Bank of America Trust Department"), as to their handling of "estate" assets, adverse to Plaintiff as a beneficiary with respect to a testamentary trust set up incident thereto, but with Bank of America serving as its trustee.

9. On information and belief, these concerns surrounding the manner in which Attorney Rose and others were handling the Samuel R. Goldstein estate, the FLP, and related trusts, inclusive of fiduciary income tax returns prepared/signed by Attorney Rose, culminated in a reporting by criminal tax attorney, David Capes ("Attorney Capes") of potential criminal tax fraud committed by Attorney Rose, and others, inclusive of Bank of America Trust Department, conspiring with him.

10. On information and belief, the reporting by Attorney Capes was made on a local basis, directly to officials in the Criminal Investigation Division of the Internal Revenue Service, 1222 Spruce Street, Room 6.301A, St. Louis, MO 63103, inclusive of Special Agent Scott French, Special Agent Mark Hammond, and IRS Criminal Tax Counsel, Timothy Driscoll.

11. In particular, on information and belief, Attorney Capes represented to these officials in the criminal investigation division of the IRS in St. Louis, Missouri, that a prominent, local estate planning lawyer (Attorney Rose), Plaintiff's sister (Carol Jones), a CPA (Richard Kraner), and Bank of America's Trust Department (through a Margaret Thomas) were engaged in a criminal tax conspiracy when Attorney Capes reported, by way of written transmittal (in lieu of making use of IRS Form 211), the following:

> "under 18 U.S.C. § 371, the principal claim…is that the parties involved with the filing of the 2005 FLP, i.e., Carol Jones, Al Rose, Richard Kraner and Bank of

America Trust Department through Margaret Thomas *illegally* conspired and reached agreement to conceal the fact that a $4,600,000 final liquidation payment made by the FLP to the Interim Trust was actually being held back on behalf of the FLP and its partners, Carol Jones and the BA RHG Trust, to cover any tax liability, penalty and interest associated with the discovery of possibly fraudulent filings by the FLP in 2000, 2001, 2002, and 2003.  The allegedly fraudulent filings related to the sales of Trizec Hahn stock and capital gains therefrom and from *fraudulent* payments made to Management LLC by the FLP for the benefit of Carol Jones.  The object of the conspiracy was to *fraudulently* represent that the FLP had completely liquidated as of December 31, 2005, when, in fact, over $4,600,000 had been made as a non-liquidating distribution to the Interim Trust to be held until a six-year statute of limitations had run on the previously filed returns of the FLP and Interim Trust.  The complete liquidation, as claimed, thus *fraudulently* sheltered the 2005 gains FLP earned from its liquidation of World Point Terminals, which gains should have been treated as fully taxable capital gains of the FLP.  Other statutes which may apply to the facts in this case to support additional charges related to the tax returns as discussed are 26 U.S.C. § 7201, 26 U.S.C. § 7206(1) and (2).

Additional allegations have been disclosed in this matter concerning the tax returns of Management LLC (based upon information and belief that these allegations are that Management LLC failed to report income from the FLP and made payments to and for the benefit of Carol Jones). The 2003 tax returns of Management LLC failed to report income from the FLP in the amount of $1,273,549. This amount of unreported income was then used to pay the general partner, Carol Jones, compensation in the same amount for acting as President in 2000 and 2001. It appears that no W-2 was issued to Carol Jones nor was there any withholding on what was clearly denominated as her "compensation" as President. Rather, the money was apparently paid to her as a distribution from her capital account. In 2004, further income was unreported by Management LLC (similar to the 2003 situation) in that $1,360,628 was paid to Management LLC for 2004 relating to 2003 and 2004 which sum was then paid to Carol Jones as compensation without a proper W-2 or withholding.

Further related claims made to Management LLC claims concern the individual tax returns of Carol Jones and Bob Jones. Based upon information and suspicion only in that said returns are not available to claimant, those claims are that Carol Jones failed to properly report and pay employment taxes on compensation paid to her by Management LLC in each of the years 2003 and 2004."

(emphasis added).
("Capes Tax Fraud Disclosures")

12.     On information and belief, commencing in 2006, and through at least January 8, 2008, Attorney Capes engaged in other, oral discussions with the local criminal investigation division of the IRS in Missouri, relating to the Capes Tax Fraud Disclosures.

13. On information and belief, on December 15, 2009, Attorney Capes wrote to Plaintiff, by and through one of Plaintiff's advisors, to follow up on efforts he had made previously to see if anything could be done to resolve a disputed legal bill he claimed to be due and owing to his law firm by Plaintiff, and represented that he was "informally advised" that IRS was pursuing the matters (i.e., the Capes Tax Fraud Disclosures) in which RHG was interested, and how, at that time, Attorney Capes stated that he would like to introduce Plaintiff to Tom Pliske, a former IRS District Counsel Attorney and colleague who Attorney Capes stated might be a useful attorney contact for further handling of the matter, based in part on his background and contacts within the IRS, because Attorney Capes stated that he could not do anymore on these matters because of what he described to be a long overdue outstanding account (hereafter "Capes 2009 Communication").

14. On information and belief, the Capes 2009 Communication was false because Attorney Capes did not disclose to Plaintiff that, in fact:

(A) a meeting was held at Attorney Capes' office, on November 5, 2007, attended by Supervisory Special Agent Scott French, Special Agent, Mark Hammond, and himself, and that Mr. Hammond followed up on that meeting by contacting Attorney Capes and informing him that they would not pursue the matter;

(B) another meeting was held at Attorney Capes' office, this one on January 8, 2008, attended by IRS Criminal Tax Attorney Timothy Driscoll, Special Agent Mark Hammond, an attorney, Mr. Howard Shalowitz, and himself, at which time Attorney Capes asked the IRS Criminal Investigation Division to reconsider their position, stating that the matter was of great importance, and Attorney Capes requesting that the IRS CID commit to doing a criminal investigation;

(C) at this January 8, 2008 meeting, Attorney Capes was told that the IRS CID would not commit to doing anything, as Attorney Capes had requested them to do;

(D) no further meetings were held thereafter, by and between Attorney Capes and the local IRS CID;

(E) no meeting occurred on or about November 25, 2008 (as Plaintiff was led to believe and at which time extensive documentation in the form of a Transmittal Memorandum bearing a November 28, 2008 date and a three ring binder of materials were allegedly received by Mr. Driscoll and Mr. Hammond, and who were alleged to have

further commented to Attorney Capes that not only were they "favorably impressed" with the materials, but that they would present them to the U.S. Attorney's office and the Justice Department).

15. The aforementioned "facts" as set forth in the preceding paragraph, subparts, (A) – (E), were disclosed to Plaintiff, by and through communications Plaintiff's counsel held with the Defendant IRS' Whistleblower Office, Senior Analyst, Robert Gardner, commencing in August, 2012, based solely on communications Mr. Gardner was having with local officials with the Defendant IRS Criminal Investigation Division specific to inquiries focused on the determining the dates, times, and locations of any meetings held that pertained to the Capes Tax Fraud Disclosures.

16. Plaintiff, by and through his counsel, learned of the apparent existence of written, e-mail communications (inclusive of a ledger of dates and times) sent to the Defendant IRS Whistleblower Office specifically addressing the dates, times, and places of the meetings the local IRS criminal investigation division had with Attorney Capes, that further confirm that no such meetings would have occurred *after* January 8, 2008 (inclusive of any meeting said to have occurred in November, 2008), based on e-mail communications representing to Mr. Gardner that "there was absolutely nothing from CID about even going to DOJ since neither they or civil thought there was no merit to the case."

17. On information and belief, when Plaintiff's counsel then advised Mr. Gardner with the Defendant IRS Whistleblower Office about meetings represented to have occurred *after*January 8, 2008, inclusive of the Capes Tax Fraud Disclosures allegedly presented to the local IRS criminal investigation division on or about November 25, 2008, notably, in the form of a transmittal memorandum bearing a date of November 25, 2008, together with a three-ring binder containing extensive documentation in support of the allegations made in the Capes Tax Fraud Disclosures, Mr. Gardener and the Defendant IRS Whistleblower Office became very concerned.

18. On information and belief, the Defendant IRS Whistleblower Office then sought to obtain clarifying information from the local Defendant IRS Criminal Investigation Division in Missouri as to whether or not the Capes Tax Fraud Disclosures were, in fact, made, as represented to Plaintiff.

19. On information and belief, when Mr. Gardner, with the Defendant IRS Whistleblower Office, could not obtain clarifying information from the local IRS criminal investigation division, the IRS Whistleblower Office initiated a TIGTA investigation through the filing of a complaint.

20. The aforementioned consultations with the local Defendant IRS Criminal Investigation Division in St. Louis, Missouri specific to the place, date, and time of the Capes Tax Fraud Disclosures, as revealed to Plaintiff, by and through Plaintiff's counsel, in the form of e-mails and the exchange of documents, or other written communications, are critical to Plaintiff's ability to know whether, in fact, any meeting occurred in late November, 2008, and whether at such meeting, any written transmittal memorandum, dated November 25, 2008, along with significant amounts of documentation, were actually provided to the local Defendant IRS Criminal Investigation Division in St. Louis who were then the subject of the above referenced, but now concluded, investigation conducted by TIGTA.

21. Any and all logs, describing the dates, time, and location of meetings, as well as and the alleged transmittal of documentation to the Defendant IRS, by and through submissions made by Attorney Capes on Plaintiff's behalf, are part of a record maintained in a system of records, as described in 5 U.S.C. § 552a (a)(4).

**IRS Response to Plaintiff's Initial FOIA Request**

22.     In the enumerated 8th request made in the FOIA request of July 19, 2013, as presented to the Defendant IRS, Plaintiff sought documentation and information specific to the aforementioned Capes Tax Fraud Disclosures.

23.     By letter dated August 21, 2013, the disclosure office within the Defendant IRS acknowledged receipt of Plaintiff's FOIA request and assigned that request a FOIA case number, F13206-0077. *A copy of this notification is attached hereto as Exhibit 2.*

24.     Defendant IRS was required to determine whether to comply with Plaintiff's requests within 20 days of receipt of his requests, excepting Saturdays, Sundays, and legal public holidays, pursuant to 5 U.S.C. § 552(a)(6)(A). Pursuant to this same provision, IRS was also required to notify Plaintiff immediately of the determination, the reasons therefore, and the right to appeal any adverse determinations to the head of the agency.

25.     In its letter of August 21, 2013, Defendant IRS claimed that the law allows for it to obtain a ten-day statutory extension, and in that letter, claimed that it had a statutory response date of September 5, 2013.

26.     On August 29, 2013, Plaintiff, by and through counsel, provided Defendant IRS with additional information, to show how Plaintiff had a "material interest" in the requested records, based, inter alia, on proof as to his status as an "heir at law," he being one of two surviving children, and incident to the implementation of his father's estate plan, as created by Attorney Rose, and others, which further involved the creation of a FLP, by and through which Plaintiff became an "indirect partner" under the Federal tax laws, by and through his status as a beneficiary in a testamentary trust created incident thereto.*A copy of this submitted documentation is attached hereto as Exhibit3.*

27. On September 20, 2013, Defendant IRS requested more time to obtain the records requested. *A copy of this notification from the IRS is attached hereto as Exhibit4.*

28. On September 25, 2013, Plaintiff, by and through counsel, submitted to the disclosure office a copy of the Form 706 exactly in the form that it was provided by Defendant IRS RAIVS unit, per the filing of IRS Form 4506. *A copy of this submission is attached hereto as Exhibit 5.*

29. On October 2, 2013, and in light of the entire Federal estate tax return file having been sent by Defendant's RAIVS unit to the disclosure officer, Plaintiff, by and through counsel, requested that the new contact information be provided for the person who was being assigned to handle the request made by Plaintiff. *A copy of this request by Plaintiff is attached hereto as Exhibit 6.*

30. On October 21, 2013, Defendant IRS wrote to Plaintiff, to indicate that it was still working on Plaintiff's request, and needed additional time to complete the review of the documents. *A copy of Defendant IRS letter is attached hereto as Exhibit 7.*

31. On December 10, 2013, Plaintiff, by and through counsel, provided the Disclosure Officer with Defendant IRS with notification that Defendant IRS had complied with Plaintiff's requests made of the Defendant IRS RAIVS department for copies of the Federal tax returns for the trust identified as SUC TUA S GOLDSTEIN FB RICHARD and had provided copies of such returns, but that Plaintiff's requests for copies of the FLP partnership tax returns remained outstanding. *A copy of this notification is attached hereto as Exhibit 8.*

32. On January 6, 2014, DefendantIRS responded, by way of written response and production of a CD, containing 4,028 pages located in response to Plaintiff's request, with respect to which 89 pages in part, and 1,780 pages in full were withheld, as "tax information of other

taxpayers" exempt pursuant to (b)(3) and 26 U.S.C. § 6103(a), an additional 14 pages withheld in full under FOIA exemption (b)(5), and reference made to "routine agency procedure" by which a taxpayer is to request fiduciary and partnership tax returns. *A copy of Defendant's response is attached hereto as Exhibit 9.*

33. In that response of January 6, 2014, specific to the enumerated 8th request for information and documentation pertinent to the Capes Tax Fraud Disclosures, purportedly made on behalf of Plaintiff, by Plaintiff's attorney, Attorney Capes, the Defendant IRS responded as follows:

> "In response to your Item 8 for any and all submissions by Attorney David Capes, the Freedom of Information Act does not require agencies to answer questions, enter into doctrinal discussions, or perform the research for this type of information that you are seeking. Furthermore, to the extent that such information may or may not exist, it would be protected by FOIA exemption (b)(7)(D).
>
> Exemption (b)(7)(D) protects the identity of confidential sources and, in criminal cases, the information the confidential source provided. This exempts from disclosure the name and any material which could reasonably be expected to disclose the identity of a confidential source. In criminal investigations, any information furnished by a confidential source, whether or not it identifies the source, is exempt."

34. On February 10, 2014, Plaintiff appealed this denial, and in particular, as to the enumerated 8th request made of the Defendant IRS, stated, "the withholding of documentation under a purported application of (b)(7)(D) is not appropriately applied if David Capes represented himself to be serving as agent for the requester, Richard Goldstein, and this exception is used to deny a requester access to that which was purportedly submitted to law enforcement on HIS behalf."

35. On February 10, 2014, Plaintiff appealed this denial. *A copy of Plaintiff's appeal is attached hereto as Exhibit 10.*

36.     On March 6, 2014, Defendant IRS rejected Plaintiff's appeal, claiming that the Disclosure Specialist met its burden in regard to the conducting of a reasonable search for records and that exemptions were properly applied.  ***A copy of Defendant IRS' rejection of Plaintiff's appeal is attached hereto as Exhibit 11.***

37.     On March 14, 2014, Plaintiff sought reconsideration of the Defendant IRS' position as stated on March 6, 2014.  ***A copy of Plaintiff's request for reconsideration is attached hereto as Exhibit 12***.

38.     Defendant IRS did not respond to Plaintiff's request for reconsideration.

39.     Plaintiff, by and through its counsel, learned at some point that the Defendant IRS Whistleblower Office initiated a TIGTA investigation surrounding the handling of the Capes Tax Fraud Disclosures by the local criminal investigation division, and when that investigation then concluded,[2] Plaintiff, by and through counsel, made a request pursuant to FOIA, as well as the Privacy Act of 1974, specifically by and through the Office of Chief Counsel Disclosure Branch, Treasury Inspector General for Tax Administration (TIGTA), for the following records:

> "Any and all information or investigative material that may have come to light as a result of a completed "Any and all information or investigative material that may have come to light as a result of a completed TIGTA investigation(s) regarding attorney Timothy Driscoll, and/or Special Agents, Mark Hammond and/or Scott French and their interactions with attorneys David Capes and/or Howard Shalowitz from 2006 through 2010 concerning the reporting of potential tax crimes by various individuals or firms."

40.     On August 5, 2014, the Office of Chief Counsel, on behalf of the disclosure arm of TIGTA, rejected Plaintiff's request, explaining its reasons for doing so, as follows:

> "To the extent you are requesting documents pertaining to a third party, TIGTA can neither admit nor deny the existence of responsive records. Your request seeks access to the types of documents for which there is no

---

[2] TIGTA advised Plaintiff that it make a FOIA request after it had concluded its investigation.

public interest that outweighs the privacy interests established and protected by the FOIA (5 U.S.C. §§ 552(b)(7)(C) and (b)(6)). This response should not be taken as an indication that such records exist; rather it is our standard response to requesters seeking records *on third parties*."(emphasis added).

## COUNT I
### (Violation of the Privacy Act, 5 U.S.C. § 552a)

41. Plaintiff realleges paragraphs 1 through 40 as if fully stated herein.

42. Plaintiff is an individual seeking access to information about himself, incident to whistleblowing activities that bestowed him with recognized Federal rights and privileges, but-for the fact that any statutory claims otherwise held by Plaintiff under 26 U.S.C. § 7623 were determined by the Defendant IRS, by and through its Whistleblower Office to be ineligible for recovery.

43. Any documentation in the possession, custody and control of Defendant IRS is a record maintained in a system of records, as described in 5 U.S.C. § 552a (a)(4).

44. Defendant IRS is wrongfully withholding records, on the stated basis that the same are purportedly those that pertain to third parties, when, in fact, such is information that was obtained by Defendant from Plaintiff, incident to the Capes Tax Fraud Disclosures.

45. Defendant IRS' refusal to provide Plaintiff with all documents related to the Capes Tax Fraud Disclosures, inclusive of submissions purportedly made to the IRS employees, amounts to a deprivation of Plaintiff's federal rights.

WHEREFORE, Plaintiff respectfully requests that the Court: (1) order Defendant IRS to conduct searches for any and all records responsive to Plaintiff's requests to have access to information about himself; (2) order Defendant IRS to produce, by a certain date, any and all non-exempt records responsive to Plaintiff's Privacy Act requests; (3) enjoin Defendant IRS from continuing to withhold any and all non-exempt records responsive to Plaintiff's requests; (4) grant

Plaintiff an award of attorneys' fees and other litigation costs reasonably incurred in this action; and (5) grant Plaintiff such other relief as the Court deems just and proper.

## COUNT II
### (Violation of FOIA, 5 U.S.C. § 552)

46. Plaintiff realleges paragraphs 1 through 40 as if fully stated herein.

47. Defendant IRS is unlawfully withholding records requested by Plaintiff pursuant to 5 U.S.C. § 552.

48. Plaintiff has exhausted applicable administrative remedies.

49. Plaintiff is being irreparably harmed by reason of Defendant IRS's unlawful withholding of requested records, and Plaintiff will continue to be irreparably harmed unless Defendant IRS is compelled to conform its conduct to the requirements of the law.

WHEREFORE, Plaintiff respectfully requests that the Court: (1) order Defendant IRS to conduct searches for any and all records responsive to Plaintiff's FOIA requests and demonstrate it employed search methods reasonably likely to lead to the discovery of records responsive to Plaintiff's FOIA requests; (2) order Defendant IRS to produce, by a certain date, any and all non-exempt records responsive to Plaintiff's FOIA requests and a Vaughn index of any responsive records withheld under claim of exemption; (3) enjoin Defendant IRS from continuing to withhold any and all non-exempt records responsive to Plaintiff's FOIA requests; (4) grant Plaintiff an award of attorneys' fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and (5) grant Plaintiff such other relief as the Court deems just and proper.

                      Respectfully submitted,

Dated: December 22, 2014

                      Adam B. Katzen
                      D.C. Bar No. 492410
                      LAW OFFICES OF ADAM B. KATZEN, P.C
                      1250 Connecticut Avenue, NW, Suite 200
                      Washington, D.C. 20036
                      Telephone:  (202) 261-3597
                      Facsimile:  (888) 434-4886
                      adamkatzen@katzenlaw.net
                      *Counsel for Plaintiff*