## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
**Richard H. Goldstein,**                            )
                                                    )
      **Plaintiff,**                            )
                                                    )
      **v.**                                   )     **Civil No. 14-cv-02186 (APM)**
                                                    )
**Internal Revenue Service,**                        )
                                                    )
      **Defendant.**                            )
_____              )

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

Samuel Goldstein was a prominent philanthropist who made his fortune by transforming a small oil trading company into a multibillion-dollar enterprise.  He passed away on June 22, 2000, leaving behind a substantial estate.  This case concerns a Freedom of Information Act (FOIA) request that Samuel Goldstein's son, Plaintiff Richard H. Goldstein, filed with Defendant Internal Revenue Service (IRS), seeking various tax records concerning his father's estate.  Plaintiff's FOIA request comprised five single-spaced typed pages and was not a model of clarity.  Broken into nine separate, detailed sub-parts, Plaintiff's FOIA request, generally speaking, asked for tax return and return information pertaining to his father's estate, a living trust encompassed within his father's estate, and a family limited partnership (FLP) that held an undefined amount of the estate's assets.  In addition, after his father's death, Plaintiff became suspicious about certain transfers involving the FLP, and instructed his lawyer, David Capes, to report to the IRS what Plaintiff believed were illegal transfers designed to avoid tax payments.  Plaintiff's FOIA request also sought documents concerning the interactions between Capes and the IRS.

The IRS did not conduct a search for most of the nine itemized requests.  Instead, it claimed that Plaintiff had failed to show that he was legally entitled to obtain the tax records requested under 26 U.S.C. § 6103, which governs the confidentiality and disclosure of tax records.  The IRS, however, did locate and produce some tax returns requested by Plaintiff.  It also located approximately 4,000 pages of other tax records, but produced only half of these pages because it concluded that Plaintiff was not legally entitled to the other half under section 6103.

Before the court is Defendant's Motion for Summary Judgment, Plaintiff's Cross-Motion for Summary Judgment, and Plaintiff's Motion for a *Vaughn* Index.  The court has found the briefing and record in this case to be difficult to comprehend.  In particular, the court has struggled to discern what records the IRS actually produced, if any, in response to each of Plaintiff's requests.  The court thus has done its best to bring some amount of clarity to an otherwise untidy record.  Upon review of these records and for the reasons explained below, the court grants in part and denies in part Defendant's Motion for Summary Judgment, denies Plaintiff's Cross-Motion for Summary Judgment, and denies Plaintiff's Motion for *Vaughn* Index.

## II.     BACKGROUND

### A.     Factual Background

#### 1.     *Plaintiff's FOIA Request*

On July 19, 2013, Plaintiff Richard H. Goldstein, through his attorney T. Scott Tufts, filed a Freedom of Information Act (FOIA) request with Defendant IRS.  *See* Am. Compl., ECF No. 11, Ex. 2, ECF No. 11-2 [hereinafter FOIA Request].  Plaintiff explained that he is "an heir at law, a beneficiary, and distributee of trusts" for the estate of Samuel R. Goldstein.  *Id.* at 3.  Plaintiff claimed that, because he held financial interests in the estate and trusts established by his father and he continued to receive distributions, he had "a material interest in the tax returns and tax

return information for his father's estate, and trusts . . . as well as with respect to a family limited

partnership identified as the SRG INVESTMENT LIMITED PARTERSHIP." *Id.*   Plaintiff

requested nine categories of tax return records—or "Items"—concerning his father's estate and

related financial interests.  Each Item is summarized below:

(1) The Examination Division's administrative file for the estate tax audit of the estate of Samuel R. Goldstein;
(2) The estate tax return (Form 706) and return information for the estate of Samuel R. Goldstein;
(3) The fiduciary income returns (Form 1041) for the estate of Samuel R. Goldstein for the years 2000 – 2006;
(4) The fiduciary income returns (Form 1041) for the Samuel R. Goldstein Living Trust for the years 2000 – 2006;
(5) The audit files pertaining to audits of SRG Investment Limited Partnership;
(6) [Blank];
(7) The partnership tax returns (Form 1065) filed for SRG Investment Limited Partnership for the years 2000 – 2006;
(8) Documents relating to the interactions between his lawyer, David Capes, and IRS employees, including Capes' disclosure of suspected fraudulent transfers involving SRG Investment Limited Partnership;
(9) The audit files pertaining to audits of Bank of America, N.A., and its use of nine different funds named in the request; and,
(10) The K-1s issued by the Bank of America funds listed in Item 9 to a living trust for the benefit of Plaintiff, identified as SUC TA S GOLDSTEIN FB RICHARD, for the years 2005 – 2012.

*Id.* at 4-6.

The IRS responded on January 6, 2014, via a letter signed by Ronald T. Mele, Disclosure

Manager.  Am. Compl., Ex. 10, ECF No. 11-16 [hereinafter FOIA Response].  It informed Plaintiff

that the IRS had located 4,028 pages in response to Items 1 and 2, of which it was disclosing 2,248.

*Id.* at 1.  With regard to the undisclosed materials, Mele explained that the IRS was withholding

1,780 pages in full and 89 pages in part based on FOIA Exemption 3, which requires an agency to

withhold documents exempted from disclosure by another law.   Specifically, the IRS cited

26 U.S.C. § 6103(a) and explained that, under that statute, Plaintiff was not entitled to receive "tax

information of other taxpayers."  *Id.* at 1-2.  Mele also explained that the IRS was withholding

additional documents responsive to Items 1 and 2 under FOIA Exemption 5, which protects documents from disclosure under the deliberative process, attorney-client, or attorney work product privileges.  *Id.* at 2.

As to Items 3, 4, and 7—which sought fiduciary and partnership "tax returns"—the IRS stated that it had not processed Plaintiff's request under its FOIA procedures.  *Id.*  The IRS explained that its regulations provided an alternative, "non-FOIA" procedure for requesting tax returns under 26 C.F.R. § 601.702(d).  *Id.*  Although it did not say so explicitly, the IRS' response suggested that Plaintiff should pursue the tax returns he requested through that alternative agency procedure instead of through its FOIA process.  *Id.*

As to Item 5, which sought information about an IRS audit of SRG Investment Limited Partnership, the agency declined to conduct a search because Plaintiff had not demonstrated that he was a "general partner, limited partner, or special limited partner" of SRG Investment Limited Partnership.  *Id.*  The IRS, therefore, advised Plaintiff that it could "neither confirm nor deny that income tax audits were conducted in SRG Investment Limited Partnership."  *Id.*

As to Item 8, which demanded documents concerning attorney David Capes' interactions with the IRS, the agency refused to provide information on the ground that all responsive documents were exempt pursuant to Exemption 7(D), which permits an agency to withhold records to protect the identity of confidential sources.  *Id.* at 2-3.  Finally, as to Items 9 and 10, the IRS declined to conduct a search because Plaintiff had not produced a waiver from Bank of America— the entity whose records Plaintiff sought—authorizing the IRS to make the requested disclosures.  *Id.* at 3.

By letter dated February 10, 2014, Plaintiff appealed the IRS' decision to withhold certain documents.  *See generally*, Am. Compl., Ex. 11, ECF No. 11-17 [hereinafter FOIA Appeal].  The

IRS responded on March 6, 2014, via a letter sent by Appeals Team Manager Thomas W. Mitchell, affirming the determinations made in the January 6, 2014 response.  Am. Compl., Ex. 12, ECF No. 11-22 [hereinafter Response to FOIA Appeal] at 4.  Plaintiff sent a request for reconsideration on March 14, 2014, to which the IRS did not respond.  *See generally*, Am. Compl. Ex. 13, ECF No. 11-23.

### B.    Procedural History

On December 23, 2014, Plaintiff filed his complaint in this court, alleging that by refusing to disclose all requested records the IRS had violated the Privacy Act, 5 U.S.C. § 552(a) (Count I), and FOIA, 5 U.S.C. § 552 (Count II).  Compl., ECF No. 1.  On March 4, 2015, Plaintiff filed an amended complaint.  *See* Am. Compl.  On June 3, 2015, the IRS filed a Motion to Dismiss and Motion for Summary Judgment.  *See* Def.'s Mot. to Dismiss and for Summ. J., ECF No. 19 [hereinafter Def.'s Mot.].  Plaintiff responded with a Cross-Motion for Summary Judgment, ECF No. 24, and a motion seeking to compel the IRS to prepare a *Vaughn* index.  ECF No. 23.

## III.    LEGAL STANDARDS

### A.    Standard for Motion for Summary Judgment

Courts are to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To make this determination, the court must "view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party."  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations and internal quotation marks omitted).  A dispute is "genuine" only if a reasonable fact-finder could find for the nonmoving party, and a fact is "material" only if it is capable of affecting the outcome of litigation.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248

(1986), A non-material factual dispute must not prevent the court from granting summary judgment. *See id.* at 248-50.

Most FOIA cases are appropriately decided on motions for summary judgment. *See Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). A court may award summary judgment in a FOIA case by relying on the information included in the agency's affidavits or declarations if they are "relatively detailed and non-conclusory," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citations and internal quotation marks omitted), and describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

To prevail on a motion for summary judgment, the agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978); *see also Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter *de novo*.'" *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

## B.      Exhaustion of Administrative Remedies

FOIA provides that an agency must promptly provide records in response to a request that (1) "reasonably describes" the records sought and (2) "is made in accordance with [the agency's]

published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A). If a party believes that the agency has not responded adequately, a plaintiff is required to exhaust his administrative remedies before filing a FOIA suit in federal court. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990) (citations omitted); *Wilbur v. C.I.A.*, 355 F.3d 675, 677 (D.C. Cir. 2004). Although the exhaustion requirement is "not jurisdictional," it is a "jurisprudential doctrine" and the "failure to exhaust precludes judicial review if 'the purposes of exhaustion' and the 'particular administrative scheme' support such a bar." *Hidalgo v. FBI*, 344 F.3d 1256, 1258-59 (D.C. Cir. 2003) (quoting *Oglesby*, 920 F.2d at 61). FOIA's administrative scheme "favors treating failure to exhaust as a bar to judicial review." *Wilbur*, 355 F.3d at 677 (quoting *Hidalgo*, 334 F.3d at 1259) (internal quotation marks omitted). Thus, in most cases, "[f]ailure to comply with agency FOIA regulations amounts to a failure to exhaust administrative remedies, which warrants dismissal." *Dale v. IRS*, 238 F. Supp. 2d 99, 103 (D.D.C. 2002) (citations omitted). "An agency's obligations commence upon receipt of a valid request; failure to file a perfected request therefore constitutes failure to exhaust administrative remedies." *Id.* (citations omitted).

## C.    The IRS' Regulations Governing Information Requests

The IRS has adopted detailed rules and procedures which requesters who seek information from the agency must strictly follow. *Id.* at 103 (describing 26 C.F.R. § 601.702). The IRS regulations make clear that "only requests for records which fully comply with the requirements of this section can be processed in accordance with this section." 26 C.F.R. § 601.702(c)(4)(i). If an agency receives a request that falls short of these requirements, "it is not obligated to process the request," and if a "requester nonetheless files suit, she is said to have failed to exhaust her administrative remedies, and she must file a perfected request before a court will compel the

agency to respond." *Kalu v. IRS*, Civ. No. 14-9938 (JEB), 2015 WL 4077756, at *4 (D.D.C. July 1, 2015) (citing *Walsh v. FBI*, 905 F. Supp. 2d 80, 84 (D.D.C. 2012); *Rodriguez-Cervantes v. Dep't of Health & Human Servs.*, 853 F. Supp. 2d 114, 117 (D.D.C. 2012); *Strunk v. Dep't of State*, 693 F. Supp. 2d 112, 114 (D.D.C. 2010)).

The IRS has established two separate processes for requesting records that are relevant to this case. The first is for tax returns and their attachments. The IRS Code defines the term "return" to mean

> any tax or information return, declaration of estimated tax, or claim for refund required by, provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed.

26 U.S.C. § 6103(b)(1). Requests for "returns" are governed by 26 C.F.R. § 601.702(d), which requires requesters to submit an IRS Form 4506, "Request for Copy or Transcript of Tax Form." According to the IRS, the process for requesting tax returns is "a non-FOIA procedure." Def.'s Mot. at 7, n.3.

The other IRS process at issue in this case is a request for a broad category of materials called "return information." As pertinent here, the IRS Code defines "return information" to mean:

> [A] taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount

thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense[.]

26 U.S.C. § 6103(b)(2)(A).  Requests for return information are subject to the detailed procedures set forth at 26 C.F.R. § 601.702(c).

## IV.  DISCUSSION

### A.  Requests for Tax Returns

Before turning to the individual requests made by Plaintiff, the court must address precisely which of Plaintiff's requests are before the court.  Of Plaintiff's nine itemized requests, the IRS read five of them—Items 2, 3, 4, 7, and 10—as seeking tax "returns," a category of records distinct from "return information."  Def.'s Mot. at 7, n. 3.  As discussed above, the IRS has a separate, non-FOIA process for requesters who seek tax returns.  As a result, the IRS employee who initially processed Plaintiff's FOIA request, Kenneth Mills, "did not focus on verifying entitlement or on performing a search for [non-FOIA] documents responsive to Items 2, 3, 4, 7, and 10" and instead "focused on verifying entitlement and processing [FOIA-related] Items 1, 5, 8, and 9 of Plaintiff's FOIA request."  *Id.*

The IRS has also taken the position that Plaintiff has admitted to successfully obtaining the tax returns requested in Items 2, 3, 4, and 10, through the agency's non-FOIA process.  *Id.*  Plaintiff disagrees.  According to him, he "does not admit to having received all of the Items 2, 3, 4, and 10 using [the alternative] procedures."  Pl.'s Amended Memo. of P&A in Opp'n to Def.'s Mot. and in Supp. of Pl.'s Cross-Mot. for S.J., ECF No. 30, [hereinafter Pl.'s Mot.] at 18.  Neither did he receive any of the partnership returns for the SRG Investment Limited Partnership sought in Item 7.  *See* Decl. of T. Scott Tufts, Esquire, ECF No. 22 [hereinafter Tufts Decl.] ¶ 46 (stating that he notified Batch on December 10, 2013, that he had received the trust tax returns, but that "Plaintiff's requests for copies of the FLP partnership tax returns remained outstanding"); *see also*

*id.* ¶ 101 (indicating that a May 5, 2003 letter from Attorney Rose to the IRS was produced, "but not its enclosed partnership tax returns . . .").

Setting aside for the moment this factual dispute, the court turns to another disagreement between the parties.  The IRS seems to assert that Plaintiff's requests for tax returns—Items 2, 3, 4, 7, and 10—are *not* encompassed within this action.  It contends that, because any non-disclosed tax returns were subject to a non-FOIA administrative procedure, "they are not at issue in this litigation."  Def.'s Resp. to Pl.'s Cross Mot., ECF No. 32 [hereinafter Def.'s Resp.], at 2, n. 2.  As a consequence, the IRS' briefing and supporting declarations provide little to no argument and factual development with respect to Items 2, 3, 4, 7, and 10.  *See* Def.'s Mot. at 9 ("The only items remaining at issue in this FOIA Request are Items 1, 5, 8, and 9.").  Plaintiff, not surprisingly, holds a contrary view—he believes that, despite involving a non-FOIA process, the IRS' decisions to withhold documents related to Items 2, 3, 4, and 7 are still subject to review under FOIA. *See* Pl.'s Mot. at 18-20 (describing his efforts to exhaust his administrative remedies in trying to obtain the tax returns).

The court agrees with Plaintiff.  The IRS' position misstates the law.  In *Church of Scientology of California v. IRS*, 792 F.2d 146 (D.C. Cir. 1986), the Court of Appeals addressed the connection between FOIA and 26 U.S.C. § 6103, the statute which governs the confidentiality and disclosure of tax records.  The Court of Appeals observed that "FOIA is a structural statute, designed to apply across-the-board to many substantive programs; it explicitly accommodates other laws [under FOIA Exemption 3] by excluding from its disclosure requirement documents 'specifically exempted from disclosure' by other statutes."  *Id.* at 149.  The Court of Appeals observed that section 6103 was one such "other statute."  It explained that section 6103 "does no more than what is done by *all* nondisclosure statutes covered by Exemption 3:  it prohibits the

disclosure of certain information (returns and return information)." *Id.*  In that way, Exemption 3 and section 6103 are "entirely harmonious." *Id.*  Section 6103 generally prohibits the disclosure of tax information, with enumerated exceptions, while FOIA "establishes the procedures the IRS must follow" to decide when to withhold tax information under section 6103.  *Id.  See also Maxwell v. Snow*, 409 F.3d 354, 357 (D.C. Cir. 2005) (explaining that, in *Church of Scientology*, the Court held that FOIA procedures apply to section 6103 requests).

As a consequence of *Church of Scientology*, it is settled in this jurisdiction that the denial of a request for disclosure of a tax return is subject to *de novo* review under FOIA.  In other words, even though the IRS has established a separate "non-FOIA" process for requesting tax returns, as opposed to all other types of records held by the IRS, it does not follow that an action challenging the denial of such tax returns is not subject to FOIA.  To the contrary, *Church of Scientology* makes clear that the IRS must defend any withholding of tax returns under the procedural and substantive rules of FOIA.  Accordingly, to the extent that the IRS denied Plaintiff access to tax returns requested in Items 2, 3, 4, 7, and 10, those denials are actionable under FOIA and therefore are appropriately before this court.

## B.    Individual FOIA Requests

Having addressed the scope of Plaintiff's suit, the court turns now to discuss the IRS' arguments for why summary judgment should be entered its favor.  The IRS primarily relies on section § 6103, which places strict requirements on who may gain access to different types of returns, including, as relevant here, returns filed by estates, partnerships, and corporations.  The IRS' regulations extend section 6103's restrictions to return information, as well.  *See* 26 C.F.R. § 601.702(c)(4)(i)(E).  According to the IRS' regulations, if the requester is seeking "records the disclosure of which is limited by statute or regulations (as, for example, the Privacy Act of 1974

(5 U.S.C. § 552a) or section 6103 and the regulations thereunder)," he is required to "establish the identity and the right of the person making the request . . . in accordance with paragraph (c)(5)(iii) of this section."  26 C.F.R. § 601.702(c)(4)(i)(E).  Paragraph (c)(5)(iii) sets forth the type of poof necessary for a requester to establish his or her "identity and right to access to [requested] records."  *Id.* § 601.702(c)(5)(iii).

The IRS' primary argument for summary judgment as to Items 5, 7, 8, 9, and those documents withheld as to Item 1 is that Plaintiff failed to demonstrate his "right" to the sought-after records under section 6103.  Pl.'s Mot. at 8-10.  Although the IRS does not address Items 2, 3, 4, and 10 in any detail, it seems to make the same argument with respect to those requests, as well.  Def.'s Resp. at 2 n.2 ("[E]ven if Plaintiff proceeded under the FOIA to obtain the documents requested in these items, Plaintiff still has not demonstrated his entitlement to receive these documents under the FOIA[.]").  The court addresses the IRS' argument below in the context of each of Plaintiff's requests.

        1.     *Item 1: Samuel R. Goldstein Estate Tax Examination File*

        a.     <u>Withholding of records under section 6103</u>

In Item 1, Plaintiff sought the "entire Examination Division Administrative File for the estate tax audit conducted by the IRS" regarding the Estate of Samuel R. Goldstein.  FOIA Request at 4.  According to IRS Disclosure Specialist Kenneth L. Mills, who was initially assigned to process Plaintiff's FOIA request, he learned during an August 27, 2013, phone conversation with Plaintiff's attorney that Plaintiff was also working with the Return and Income Verification Systems (RAIVS) unit to acquire tax returns for his father's estate.  Def.'s Mot., Ex., Decl. of Kenneth L. Mills, ECF No. 19-3 [hereinafter Mills Decl.] ¶ 8.  RAIVS is the IRS unit that processes requests for tax returns under the separate, "non-FOIA" process established by the agency.  *Id.*

(explaining that requesters seeking a tax return can file a Form 4506, Request for Copy of Tax Return, which is "a routine form that may be submitted by individuals to request copies of a tax return . . . without the need for the individual to file a FOIA request," and stating that, although Form 4506 requests are "not processed by the same unit within the IRS that processes FOIA requests," such requests are "still subject to the same non-disclosure provisions of section 6103 of the [IRS Code] that apply to FOIA requests"). *Id.*; *id.* at 6 n.3.  On September 13, 2013, Mills learned from Mary Bailey in the RAIVS unit that she had located the tax examination file for the Estate of Samuel R. Goldstein, which Plaintiff had requested in Item 1. *Id.* ¶ 10.  Upon his request, RAIVS sent Mills the examination file. *Id.* ¶¶ 10-11.

Mills determined that Plaintiff had established a right to some, but not all, of the documents contained in the estate tax examination file. *Id.* ¶ 20.  The tax examination file contained 4,028 pages, but Mills only produced 2,248 pages in full.  Tufts Decl. ¶ 48.  To determine which documents to disclose Mills relied on section 6103(e)(1)(E), Mills Decl. ¶ 17, which provides that a person may not access an estate's tax return, unless she is "the administrator, executor, or trustee of such estate" or "any heir at law, next of kin, or beneficiary under the will, of the decedent," and the Secretary determines that that person has a "material interest which will be affected by information contained therein."  26 U.S.C. § 6103(e)(1)(E).  According to the Internal Revenue Manual (IRM), a "material interest" is "an important interest and is generally, but not always, financial in nature."  IRM 11.3.2.4.7 (Aug. 29, 2008).[1]  Thus, a requester seeking tax records

---

[1] As an example, the IRM notes that "[s]ubmission of a copy of a will by a beneficiary who is described in the will as entitled to 'x' percent of the decedent's gross estate, together with a statement that the decedent's return is needed to assist the beneficiary in determining whether he/she has received a proper share of the estate, would generally be sufficient to permit disclosure.  The merits of an action, such as a law suit brought by a beneficiary, will generally, but not always, have no bearing on the material interest determination."  IRM 11.3.2.4.7 (Aug. 29, 2008).

concerning an estate must establish both a qualifying relationship to the estate *and* a "material interest" in the estate's tax records.

Mills concluded that Plaintiff had a qualifying relationship to the Samuel R. Goldstein Estate, because Plaintiff was an "heir" to his father's estate.  With his FOIA request, Plaintiff submitted two documents—his father's Last Will and Testament and the Eighth Amendment to the Samuel R. Goldstein Living Trust.  Am. Compl., Ex. 2, ECF No. 11-2 [hereinafter Trust Eighth Amendment] at 25.  The Samuel R. Goldstein Living Trust, as the name connotes, was a living, or *inter vivos*, trust set up by a grantor—Plaintiff's father, Samuel Goldstein—to hold assets for his benefit during his lifetime.  *See generally* Restatement (Third) of Trusts § 25 cmt. a. (Am. Law Inst. 2003).   The Eighth Amendment to the Samuel R. Goldstein Living Trust acted as a testamentary document that distributed the Living Trust's assets upon Samuel Goldstein's death. It established Plaintiff as a beneficiary of the Samuel R. Goldstein Living Trust, providing that "[u]pon the [death] of Grantor"—Samuel R. Goldstein—"if Grantor's son, Richard H. Goldstein . . . is then living . . . one-half (1/2) of the Balance of the Trust Estate remaining after the disposition . . . shall be held in trust for Richard H. Goldstein."  Trust Eighth Amendment at 25.  Accordingly, the Trust Eighth Amendment clearly supports Mills' decision that Plaintiff was an heir to his father's estate.

Although Mills found that Plaintiff had satisfied the relational component of section 6103(e)(1)(E), he determined that Plaintiff had not shown a "material interest" in the entirety of the tax examination file.  Mills Decl. ¶ 20.  After filing his FOIA request, Plaintiff submitted two letters to the IRS dated August 29, 2013, and September 25, 2013, to demonstrate a "material interest" in his father's estate's audit file.  Am. Compl., Ex. 11-7 at 2; Ex. 11-11 at 2. Mills concluded that the letters generally expressed concern about "(a) how the estate plan affected

[Plaintiff's] inheritance, and (b) whether or not certain information was provided to the IRS about the estate." Mills Decl. ¶ 19.  According to Mills, however, the letters lacked clarity.  He noted that "Plaintiff did not articulate specifically what material interest, as decedent's heir, would be affected by the estate's return or return information" and that the "only financial interest plaintiff referenced in his letter was his status as a beneficiary of a trust established by his father and his general status as his father's heir." *Id.* ¶¶ 19-20.

Nevertheless, Mills surmised that, "because plaintiff appeared to be concerned about his share of the inheritance, plaintiff had a material interest in the estate's return and return information for the year of Samuel R. Goldstein's death as it would assist plaintiff in determining what assets were in the estate at the time of the decedent's death." *Id.* ¶ 20.  He further determined that the tax records from the year of his father's death "would assist plaintiff in determining what assets he may be entitled to as the beneficiary of a trust established by his father and his general status as an heir." *Id.*  Mills, however, concluded that Plaintiff had not demonstrated a material interest in any return information for any other year, as such information would not assist him in learning what assets the estate held at the time of his father's death. *Id.*  Thomas Batch, an IRS Senior Disclosure Specialist who was assigned to this case in September 2013, concurred with Mills' determination. *See* Def.'s Mot., Ex., Decl. of Thomas M. Batch, ECF No. 19-4 [hereinafter Batch Decl.], ¶ 15.

Based on Mills' and Batch's judgments, the IRS now argues that it is entitled to summary judgment as to Item 1.  Specifically, it contends that, because Plaintiff did not show a "material interest" as to the withheld documents, he failed to submit a "perfected request," as required by IRS regulations, and therefore failed to exhaust remedies.  Def.'s Mot. at 11.  Alternatively, the IRS maintains that it properly withheld records under Exemption 3, because Plaintiff's failure to

demonstrate a material interest meant that disclosure was prohibited under section 6103(e)(1)(E). *See id.* at 21.

The court declines, for procedural reasons, to enter summary judgment in the IRS' favor on Item 1 at this time. The IRS' regulations impose burdens not only the requester, but on the IRS itself. If a person has failed to perfect his request, the regulations require the agency to "promptly advise the requester in what respect the request or appeal is deficient so that it may be resubmitted or amended for consideration in accordance with this section." *See* 26 C.F.R. § 601.702(c)(1)(i). The regulations also state that "[r]equesters shall be notified promptly in writing of any requirements which have not been met or any additional requirements to be met." *Id.* § 601.702(c)(4)(i).

Here, the IRS failed to carry out these obligations with respect to Item 1. The agency's response to Plaintiff's FOIA request tersely explained that it was withholding

> 89 pages in part and 1,766 in full under FOIA exemption (b)(3) in conjunction with IRC 6103(a). The withheld portions are the tax information of other taxpayers. FOIA exemption (b)(3) requires us to withhold information that is specifically exempted from disclosure by another law. The law supporting this exemption is Internal Revenue Code section 6103(a).

FOIA Response at 1-2. The response made no mention of the agency's determination that Plaintiff lacked a material interest as to return information for years other than his father's death; indeed, nowhere does the IRS cite the "material interest" standard as the basis for the agency's denial.[2] Because the IRS did not notify Plaintiff "in what respect the request" "[was] deficient," he did not have the opportunity to "resubmit[ ] or amend[ ]" his request "for consideration." 26 C.F.R. § 601.702(c)(1)(i). Instead, the IRS unilaterally *assumed* Plaintiff's material interest in seeking the estate's tax records. *See* Mills Decl. ¶ 20 (stating that "I determined that because plaintiff

---

[2] The denial of Plaintiff's appeal provides no further explanation about the reasons for the IRS' withholding of records responsive to Item 1. *See generally* Am. Compl., Ex. 22.

*appeared to be concerned* about his share of the inheritance," he had a material interest) (emphasis added).  The IRS cannot now claim that Plaintiff failed to perfect his request when, according to its own regulations, it denied him the opportunity to do so.

The IRS' regulations emphasize the importance of requesters conforming their demands to the IRS' procedures.  *See* 26 C.F.R. § 601.702(c)(4) ("Requesters are advised that only requests for records which fully comply with the requirements of this section can be processed in accordance with this section.").  The IRS should be held to a standard no less rigorous.  Accordingly, the court will remand this portion of Item 1 to the IRS so that it can advise Plaintiff in writing "in what respect" his request is deficient under 26 C.F.R. §§ 601.702(c)(1)(i), 601.702(c)(4)(i), thereby giving him an opportunity to perfect the request and exhaust his remedies.

b.   <u>Other exemptions applicable to Item 1</u>

The IRS also asserted FOIA exemptions as to certain portions of other records responsive to Item 1.  The court will uphold the IRS' withholding of an employee's phone number on Bates page 799 pursuant to Exemption 6, 5 U.S.C. § 552(b)(6).  *See People for the Am. Way Found. v. National Serv.*, 503 F. Supp. 2d 284, 307 (D.D.C. 2007) (holding that although the names of individuals who petitioned the government should be disclosed, their addresses and phone numbers should be redacted because "it is unclear what the public would learn about agency conduct by the disclosure of personal addresses and phone numbers"); *Judicial Watch of Florida, Inc. v. DOJ*, 102 F. Supp. 2d 6, 18 (D.D.C. 2000) (holding that "there is no public interest which outweighs individuals' privacy interests in their home addresses and telephone numbers, and summary

17

judgment accordingly is granted to DOJ as to these redactions"). Therefore, summary judgment is granted to the IRS with respect to that redaction.

Additionally, the court affirms the IRS' invocation of Exemption (7)(E), 5 U.S.C. § 552(b)(7)(E), with regard to its redaction of Discriminant Function, or DIF, scores. Exemption (7)(E) allows an agency to withhold information compiled for law enforcement purposes if its release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). According to Ronald Mele, an IRS Disclosure Specialist, "DIF scores, standards used by the Service to evaluate tax returns, play an important role in the Service's decision to audit certain tax files" and their release could allow "individuals to manipulate their DIF scores and possibly avoid an examination by the Service." Def.'s Mot., Ex., Decl. of Ronald T. Mele, ECF No. 19-8 [hereinafter Mele Decl.], ¶ 7. Courts have routinely held that DIF scores are exempt from disclosure. *See, e.g.*, *Buckner v. IRS*, 25 F. Supp. 2d 893, 898 (N.D. Ind. 1998) (finding DIF scores exempt from disclosure under (b)(7)(E) because such disclosure could allow individuals to manipulate their scores to evade audits); *Pully v. IRS*, 939 F. Supp. 429, 438 (E.D. Va. 1996) (same); *Small v. I.R.S.*, 820 F. Supp. 163, 166 n. 5 (D.N.J. 1992) (same); *Yon v. IRS*, 671 F. Supp. 1344, 1347 (S.D. Fla. 1987) (same). This court also will uphold the IRS' invocation of Exemption 7(E) to prevent disclosure of the DIF score.

> 2. *Item 2: Returns and Return Information for the Estate of Samuel R. Goldstein*

In Item 2, Plaintiff requested the estate tax return and return information for the Estate of Samuel Goldstein. *See* FOIA Request at 4. As noted previously, the IRS takes the position that, because Item 2 sought only the tax returns of the Estate of Samuel R. Goldstein, the agency's non-

18

FOIA procedure applied to the request.  Mills Decl. ¶ 4.  Furthermore, it claims that Plaintiff received "a copy of the Form 706 estate tax return for the estate of Samuel R. Goldstein (plaintiff's FOIA item 2)" as a result of the non-FOIA procedure.  *Id.* ¶ 10.  Plaintiff, for his part, complains that the IRS' response was "legally insufficient" because the Form 706 he received did not provide "the full and complete return (i.e. together with all schedules, appraisals, Forms 712, etc.) nor the amendments to the return, as agreed upon, in an estate tax audit."  Am. Compl., Ex. 6, ECF No. 11-11 at 2 (parentheses in original).

The court will remand consideration of Item 2 to the IRS for two reasons.  First, the IRS wrongly determined that Item 2 exclusively sought tax returns, when in fact the request was broader and asked for "return information" for the Estate of Samuel R. Goldstein.  FOIA Request at 4.  On remand, the IRS should evaluate Item 2 to encompass this broader request.  Second, the court remands Item 2 for the same reason it remanded Item 1—the IRS failed to follow its own regulations, which required it to advise Plaintiff in writing of the deficiency in his request, so that he could perfect it.  Once again, the IRS cannot assert that Plaintiff has failed to perfect his request as to Item 2, when the agency itself failed to follow its own regulations that would enable him to do so.  The court therefore remands Item 2 to the IRS so that it can properly consider and process his request.

3.     *Items 3 and 4: Fiduciary Income Tax Returns (Form 1041) for the Samuel R. Goldstein Estate and Living Trust*

Plaintiff sought, in Item 3, the fiduciary income tax returns (Form 1041) filed for the Samuel R. Goldstein estate for the years 2000 to 2006.  *See* FOIA Request at 4.  Item 4 sought fiduciary income tax returns (Form 1041) filed for the Samuel R. Goldstein Living Trust for the years 2000 to 2006.  *See* FOIA Request at 4.  Fiduciary income tax returns are those filed by the

executor of a will or the administrator of a trust.[3]  The IRS treated Items 3 and 4 as requests for tax returns that must be requested and processed according to the non-FOIA procedures laid out in 26 C.F.R. § 601.702(d).  *See* Mills Decl. ¶ 4.

The record is completely muddled as to what, if anything, Plaintiff received in response to Items 3 and 4.  The IRS contends, on the one hand, that Plaintiff has admitted to receipt of the tax returns sought in Item 3.  Def.'s Mot. at 7 n.3 (indicating Plaintiff admitted receipt of the documents in ¶ 31 of the Am. Compl.).  Plaintiff says otherwise.  *See id.* at 18 (stating that the "IRS RAIVS unit produced 'fiduciary income tax returns (Forms 1041) only as to the trust created under the Samuel R. Goldstein Living Trust (with its 8th Amendment), for Plaintiff's benefit, as described in Items 9 and 10, but not any of the fiduciary tax returns filed by the 'estate' itself (Item 3) or those arising out of Item 4, with regard to the Samuel R. Goldstein Living Trust").  The same confusion reigns as to Item 4.  *Compare* Batch Decl. ¶ 10 (stating that he was notified by Plaintiff's attorney that Plaintiff "had received Form 1041 tax returns for years 2000-2005 for the 'Samuel Goldstein Living Trust Dated May 18, 1984' pursuant to a Form 4506 he submitted to the RAIVS unit.  These returns were requested as item 4 of plaintiff's FOIA request") *with* Pl.'s Mot. at 18 (described above).  The foregoing record confusion is due largely to the fact that the IRS did not treat Items 3 and 4 as germane to this litigation and, therefore, it did not submit an affidavit from its RAIVS unit, which processes tax return requests made through the non-FOIA process.  An affidavit from the RAIVS unit would have explained precisely what Plaintiff received in response to Items 3 and 4.

As already explained, although the IRS processes requests for tax returns under a "non-FOIA" procedure, its refusal to produce returns is nevertheless actionable under FOIA.

---

[3] *See Instructions for Form 1041 and Schedules A, B, G, J, and K-1,* INTERNAL REVENUE SERV. 4 (Jan. 8, 2016), *https://www.irs.gov/pub/irs-pdf/i1041.pdf.*

*See Church of Scientology*, 792 F.2d at 149.  Plaintiff has demonstrated that he is an heir to the Estate of Samuel R. Goldstein and that he is a beneficiary of the Samuel R. Goldstein Living Trust. *See* Trust Eighth Amendment to Living Trust at 25.  Therefore, subject to his demonstrating "a material interest which will be affected by the information contained therein," Plaintiff would be entitled to the returns sought under Items 3 and 4.   26 U.S.C. § 6103(e)(1)(E)(ii); *id.* § 6103(e)(1)(F)(ii).   Accordingly, the court remands Items 3 and 4 to the IRS for further consideration of Plaintiff's entitlement to those returns.

> 4. *Items 5 and 7: Income Tax Audits and Tax Returns with Respect to the SRG Investment Limited Partnership*

In Item 5, Plaintiff sought income tax audit files of SRG Investment Limited Partnership (SRG).  *See* FOIA Request at 4-5.  Item 7 sought partnership tax returns filed with respect to SRG for the years 2000 through 2006.  *Id.* at 5.  SRG was established, among other reasons, to hold and manage the Goldstein family's assets.  Am. Compl., Ex. C, ECF No. 11-4, ¶ 3.1.  The general and limited partner of SRG was the Samuel R. Goldstein Living Trust, which held over 99% of the partnership interest.  Am. Compl., Ex. A, ECF No. 11-5 at 33.  The Carol R. Jones Living Trust— Plaintiff's sister's living trust—was a special limited partner, with less than 1% of the partnership interest.  *Id.*  Section 6103(e)(1)(C) permits the disclosure of tax returns of a partnership to "any person who was a member of such partnership during any part of the period covered by the return." 26 USC § 6103(e)(1)(C).  Pursuant to that section, the IRS refused to disclose to Plaintiff tax returns and return information pertaining to SRG based on its determination that he was not "a general partner, limited partner, or special limited partner."  FOIA Response at 3.

Plaintiff now challenges that determination, asserting that he had an "indirect" partnership interest in SRG because he was a beneficiary of the Samuel R. Goldstein Living Trust, which owned over 99% of SRG's partnership interests.  *See* Pl.'s Reply to Def.'s Resp., ECF No. 34 at

4.   As an "indirect" partner, Plaintiff argues, he was entitled to SRG's tax returns and return information under section 6231(a)(2).   FOIA Appeal at 4.   That statute, which applies to "any partnership required to file a return under section 6031(a)," 26 U.S.C § 6231(a)(1)(A), defines "partnership" to mean (a) "a partner in the partnership" or (b) "any other person whose income tax liability under subtitle A [of the IRS Code] is determined in whole or in part by taking into account directly or indirectly partnership items of the partnership." *Id.* § 6231(a)(2).   The IRS, relying on the Mills Declaration, defends its decision on the ground that Plaintiff failed to establish a "direct membership" in SRG.   Def.'s Mot. at 12 (citing Mills Decl. ¶ 21).   Further, it argues that Plaintiff's stated interest in SRG was as a beneficiary of the Samuel R. Goldstein Living Trust, but "Plaintiff did not demonstrate that he was a beneficiary" of that trust.   *Id.* (citing Mills Decl. ¶ 20); *see also* Batch Decl. ¶ 17 (stating the same).

The IRS correctly determined that Plaintiff was not a "direct member" of SRG, but it clearly erred in finding that he was not a beneficiary of the Samuel R. Goldstein Living Trust.   He plainly was.   The Eighth Amendment to the Living Trust clearly provides that, "[u]pon the [death] of Grantor, if Grantor's son, Richard H. Goldstein . . . is then living . . . one-half (1/2) of the Balance of the Trust Estate remaining after the disposition . . . shall be held in trust for Richard H. Goldstein."   Trust Eighth Amendment at 25.   Because the IRS' denial of records responsive to Items 5 and 7 was based on a clear error, the court will remand those items to the agency to re-evaluate its determination.   Upon remand, the IRS also shall consider whether the definition of

"partner" that Plaintiff advances under 26 U.S.C. § 6231(a)(2) is applicable to persons seeking partnership returns and return information under section 6103(e)(1)(C).

>    5.    *Item 8: Submissions by Attorney David Capes*

In Item 8, Plaintiff made a broad request for documents "relative to any and all submissions made by. . . David Capes," who was Plaintiff's lawyer, to IRS employees who "specifically received information or documentation regarding possible civil and criminal tax fraud" involving his father's estate and related entities, in particular SRG.  FOIA Request at 5.[4]  In a footnote to his FOIA request, Plaintiff explained that, at his direction, Capes had made oral and written disclosures to three IRS employees—an IRS lawyer and two special agents—in which Plaintiff accused several individuals, including his father's lawyer, his sister, and others, of conspiring to make certain fraudulent transfers, apparently through SRG, designed to avoid tax payments.  FOIA Request at 5, n. 1.  The IRS denied Plaintiff's request for these documents, invoking FOIA

---

[4] The full text of Item 8 is as follows:

> Any and all papers and dividers included therein, including but not limited to all documents, reports, revenue agent work papers, notes, investigative histories, Revenue Agent or Special Agent work logs, schedules, reports of interviews, memoranda of interviews, information received from third parties, memoranda, telephone call slips, or notes and all other similar type papers prepared or accumulated relative to any and all submissions made by an attorney (attorney David Capes) to any of the persons working in the St. Louis area for the Department of the Treasury or otherwise, for the IRS, at any time between 2004 and 2010, who specifically received information or documentation regarding possible civil and criminal tax fraud involving the various entities referenced and certain individuals associated with the identified estate and trust, with respect to which Richard Goldstein maintains a material interest, including by not limited to, the trust administered by Bank of America, N.A.:

> Timothy J. Driscoll, Criminal Tax Counsel
> Mark Hammond, Special Agent
> Scott French, Special Agent
> Department of the Treasury
> Internal Revenue Service
> 1222 Spruce Street, Room 6.301A
> St. Louis, MO 63103

FOIA Request at 5-6.

Exemption 7(D), 5 U.S.C. § 522(b)(7)(D), which protects the identity and content of information provided by confidential sources.  FOIA Response at 3-4.

In these proceedings, the IRS no longer relies on Exemption 7(D) to defend its decision to deny access to records responsive to Item 8.  Def.'s Mot. at 12-15.[5]  Instead, it now argues that it was proper not to search for such records because, if they exist, they would constitute "return information" of a third party protected under section 6103, for which Plaintiff did not obtain a waiver authorizing release.  Def.'s Mot. at 13-14.  The IRS argues that the materials requested constituted "return information" because the information was "'received by, recorded by, prepared by, furnished to, or collected by the Secretary' with respect to the determination of the third parties' potential liability under the Internal Revenue Code."  Def.'s Mot. at 15 (citing Decl. of Deborah Lambert-Dean, ECF No. 19-5 [hereinafter Lambert-Dean Decl.], ¶¶ 6-7).  The fact that Plaintiff claims to have provided the information as a "whistleblower" is irrelevant, according to the IRS: "Even if we accept his assertion as true, once such information is in the custody and control of the IRS, it becomes the return information of the taxpayer(s) whose actual or potential tax liability is at issue and his status as 'the source' is not sufficient to establish his entitlement to any information that may exist under section 6103."  Lambert-Dean Decl. ¶ 8.

The court disagrees with the IRS' position as to Item 8 and will remand it to the agency for further consideration.  For starters, the IRS improperly construes Item 8 as seeking only "return information."  As defined by section 6103, return information includes:

> [A] taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation

---

[5] In a footnote, the IRS states, "to the extent that the records responsive to item 8 exist and are of the nature Plaintiff describes, these pages would likely additionally be exempt pursuant to Exemptions 7(C) and 6."  Def.'s Mot. at 15 n.10.  The court does not construe the IRS' half-hearted assertion that Exemptions 7(C) and 6 "would likely" apply as an actual invocation of those exemptions and therefore does not consider whether they apply here.

> or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense[.]

26 U.S.C. § 6103(b)(2)(A).  Plaintiff's request encompasses more than "return information," even if that term is broadly interpreted.  *See Church of Scientology of Cal.*, 792 F.2d at 151 ("Congress would not have adopted such a detailed definition of return information in Section 6103 if it had simply intended the term to cover all information in IRS files . . . ."), *aff'd* 484 U.S. 9 (1987).  As stated in his lawyer's declaration, Item 8 includes a request for documents pertaining to the "times, dates and locations of meetings his attorneys had with the local IRS criminal investigation division employees in Missouri."  Tufts Decl. ¶ 91.  Such information does not qualify as "return information."

Moreover, Item 8 encompasses "whatever documents and submissions were made to the IRS criminal division [by Capes] on [Plaintiff's] behalf."  *Id.*  Such documentation is not necessarily covered by section 6103, as the IRS contends.  Lambert-Dean Decl. ¶¶ 6-7.  The IRS' own Internal Revenue Manual appears to exclude documents supplied by third parties from the statutory definition of "disclose" under section 6103(b)(8).  It states that:

> Information furnished to the IRS by third parties (e.g., informants) may be returned to the third party upon request in most instances, provided the material has remained in its original state. This is not considered a disclosure under IRC §6103(b)(8), since nothing is being made "known" to the providing party. However, if it has become integrated with other return information or if the information has been used and this use of the information by the IRS is in any way reflected on the document, it may be returned only as provided by IRC §6103. Additionally, the document or information must be withheld from the third party if

the return of such document or information would impair or interfere with tax administration.

IRM 11.3.2.3.5 (Aug. 29, 2008).

The IRS appears not to have considered whether returning documents turned over by a whistleblower, as Plaintiff claims to be here, would run afoul of section 6103.  Accordingly, the court will remand Item 8 to the IRS to re-evaluate that request in light of (a) the court's view that Item 8 seeks more than "return information" and (b) IRM 11.3.2.3.5's exclusion of "[i]nformation furnished to the IRS by third parties (e.g., informants)" from the definition of "disclosure" under section 6103(b)(8).[6]

6.     *Items 9 and 10: Bank of America Documents*

Item 9 concerned a request for audits conducted by Bank of America and its use of nine financial funds, which were specifically named by Plaintiff in the request.  *See* FOIA Request at 6.  Item 10, in a confusingly worded request, sought "[w]ith regard to each and all of the above referenced funds who are represented in the IRS Forms 8886 disclosures made to the IRS by Bank of America, N.A., with respect to SUC TUA S GOLDSTEIN FB RICHARD, any and all K-1's issued to SUC TA S GOLDSTEIN FB RICHARD for any of the years, 2005 through 2012."  *Id.* Construing those items to request Bank of America's return and return information, the IRS declined to disclose them in the absence of a waiver from the bank.

The court agrees that the IRS properly declined to search for documents responsive to Items 9 and 10.  Section 6103(e)(1)(D) provides that the returns of a corporation may only be accessed by (i) a person designated by the board of directors; (ii) an officer or employee of the corporation upon written request by a principal officer; or (iii) a bona fide shareholder owning 1 percent or

---

[6] Plaintiff's complaint asserted one claim under the Privacy Act, which related solely to records responsive to Item 8. *See* Am. Compl., Count I.  In light of the court's decision under FOIA to remand with respect to Item 8, the court will deny without prejudice the parties' cross-motions for summary judgment as to Plaintiff's Privacy Act claim.

more of the corporation.  26 U.S.C. § 6103(e)(1)(D).  Plaintiff does not contend that he met any of those criteria or that he provided the proper waiver from the bank.  Thus, the IRS was not required to process his records in response to Items 9 and 10.[7]

Although Plaintiff correctly points out that the exhaustion requirement is a jurisprudential, rather than jurisdictional doctrine, *see* Pl.'s Mot. at 13-14, the court finds that in this case, Plaintiff's failure to exhaust precludes judicial review.  Although failure to exhaust does not necessarily preclude review under FOIA, "as a prudential consideration, the exhaustion requirement may still bar judicial review if both (1) the administrative scheme at issue and (2) the purposes of exhaustion support such a bar."  *Flowers v. IRS*, 307 F. Supp. 2d 60, 66 (D.D.C. 2004) (citations omitted).  With respect to the first factor, the Court of Appeals has made clear FOIA's administrative scheme "favors treating failure to exhaust as a bar to judicial review."  *Wilbur*, 355 F.3d at 677 (quoting *Hidalgo*, 334 F.3d at 1259) (internal quotation marks omitted).  The second factor also weighs in favor of denying review, because Plaintiff failed to perfect his request despite being advised by the agency of his failure to do so.  Because Plaintiff's claim was never properly before the agency, the court finds that the purposes of exhaustion would not be served by permitting judicial review.  *Accord Flowers*, 307 F. Supp. 2d at 69-70 ("Given that the plaintiff failed to perfect her initial request and judicial review of the request clearly would prematurely interfere with the agency process, the court declines to review the initial request."); *see also Dettman v. DOJ*, 802 F.2d 1472, 1476 n.8 (D.C. Cir. 1986) (applying exhaustion principle because "it would be both contrary to orderly procedure and good administration and unfair to those who are engaged in the tasks of administration to decide an issue which the [agency] never had a fair

---

[7] The IRS repeatedly advised Plaintiff that it would not disclose Bank of America tax records without a waiver.  *See* Mills Decl. ¶¶ 8-9; FOIA Response at 4; Response to Appeal at 3.  It thus satisfied the agency's obligation to disclose the reason for the denial under 26 C.F.R. § 601.702(c).

opportunity to resolve prior to being ushered into litigation.") (citation and internal quotation marks omitted)). The court, therefore, will enter summary judgment in the IRS' favor with respect to Items 9 and 10 in Plaintiff's FOIA Request.[8]

## V.    CONCLUSION AND ORDER

For the reasons set forth above, the IRS' Motion for Summary Judgment is granted in part and denied in part, and Plaintiff's Cross-Motion for Summary Judgment and Motion for *Vaughn* Index are denied without prejudice.  Specifically, the court rules and orders as follows:

1.    Except as provided in the next paragraph, the IRS' Motion for Summary Judgment is denied without prejudice with respect to Items 1, 2, 3, 4, 5, 7, and 8.  The court remands these Items to the agency for further proceedings consistent with the court's Memorandum Opinion.

2.    The IRS' Motion is granted with respect to Item 1 as to (a) the phone number withheld pursuant to FOIA Exemption 6 and (b) the DIF score withheld pursuant to FOIA Exemption 7(E).

3.    The IRS' Motion is granted with respect to Items 9 and 10.

4.    The parties' cross-motions as to Plaintiff's Privacy Act claim are denied without prejudice.

5.    Plaintiff's Cross-Motion for Summary Judgment is denied without prejudice, except as to Item 1 in part and Items 9 and 10, as set forth in paragraphs 2 and 3 above.  As to those Items, Plaintiff's Cross-Motion is denied *with* prejudice.

6.    Given the court's decision to remand Items 1, 2, 3, 4, 5, 7, and 8 to the agency, Plaintiff's Motion for a *Vaughn* Index is denied without prejudice.

---

[8] Alternatively, the documents responsive to Items 9 and 10 are exempted from disclosure under FOIA Exemption 3, because section 6103(e)(1)(D) requires them to be withheld.

7.     The court shall retain jurisdiction over this matter to ensure compliance with its Order.  On or before April 25, 2016, the IRS shall file a status report describing its efforts to comply with this Memorandum Opinion and Order.


Dated:  March 25, 2016

                                           Amit P. Mehta
                                           United States District Judge