# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|                                         |     |
|-----------------------------------------|-----|
| **RICHARD GOLDSTEIN,**                   | )   |
|                                         | )   |
| **Plaintiff,**                           | )   |
|                                         | )   |
| **v.**                                   | )   |
|                                         | )   |
| **INTERNAL REVENUE SERVICE,**            | )   |
|                                         | )   |
| **Defendant.**                           | )   |

**Case No. 14-cv-02186 (APM)**

_____

## MEMORANDUM OPINION AND ORDER

### I.      INTRODUCTION

This case arises from a request Plaintiff Richard Goldstein made under the Freedom of Information Act ("FOIA"), in which he sought several categories of information from Defendant Internal Revenue Service ("IRS") that, generally speaking, relate to the estate of his father, Samuel R. Goldstein.  Plaintiff divided his request into nine "Items," each directed at a particular category of tax records or related tax information.  Defendant produced thousands of pages of responsive documents, but withheld many others on the basis that Plaintiff had failed to "perfect" his requests; that is, he had not established his right to access those records under the Internal Revenue Code and IRS regulations.  In response, Plaintiff filed suit in this court, challenging Defendant's treatment of his FOIA request.

In a prior ruling in this matter, the court granted Defendant's Motion to Dismiss and Motion for Summary Judgment only in part, holding that the agency had not afforded Plaintiff an adequate opportunity to perfect his request as to certain Items or had wrongly disqualified Plaintiff from

receiving records as to others. The court therefore remanded Plaintiff's FOIA request to the IRS for further consideration of seven of Plaintiff's nine Items.

On remand, the IRS produced additional records, but refused to disclose others, determining, over Plaintiff's objection, that he still had not perfected a number of Items. Consequently, this matter is back before the court, requiring it once again to explore the intersection of FOIA, the Internal Revenue Code and its corresponding regulations, and the law of trusts and estates. In its current round of briefing, Defendant moves to dismiss Plaintiff's FOIA claims, either in whole or in part, as to six of Plaintiff's remanded Items on the ground that Plaintiff has not perfected them. As to the Items that Plaintiff did perfect, either in whole or in part, Defendant moves for summary judgment with respect to the adequacy of its searches and its segregability determinations. Plaintiff, with uncommon prolixity, opposes Defendant's Motion.

After thorough consideration of the record and for the reasons stated herein, the court grants in part and denies in part Defendant's Second Motion to Dismiss and Motion for Summary Judgment, and denies Plaintiff's Cross-Motion for Summary Judgment.

## II.    BACKGROUND

After the court decided *Goldstein v. IRS (Goldstein I)*,[1] the IRS and Plaintiff began a dialogue about the particular FOIA requests, or "Items," that the court returned to the agency for further consideration. The parties exchanged a series of letters between April 2016 and December 2016, in which the IRS identified the information that Plaintiff would need to supply to perfect the seven remaining Items, and Plaintiff responded with information that he maintained established his entitlement to the requested records. *See* Def.'s Second Mot. to Dismiss & Mot. for Summ. J., ECF No. 52, Ex. 3, ECF No. 52-5 [hereinafter Rowe Decl.], ¶¶ 5–10. In the end, after considering

---

[1] The court refers the reader to *Goldstein I* for the relevant background and procedural history of this matter. *See* 174 F. Supp. 3d 38, 42–44 (D.D.C. 2016).

Plaintiff's multiple submissions, the IRS determined that Plaintiff had perfected three requests in part (Items 1, 2, and 8) and one in full (Item 3), but that he had failed to perfect three other requests either in full or in part (Items 4, 5, and 7). *Id*. ¶¶ 11–28. In response to the perfected and partially perfected Items, the IRS searched for and released an additional 828 pages of documents in full and 91 pages in part. *Id*. ¶¶ 19, 27. As to those unperfected Items, or Item subparts, the IRS issued a final determination on December 15, 2016, informing Plaintiff that it would not search for any more responsive records. *Id*. ¶ 10.

In the motions pending before the court, Defendant moves to dismiss Plaintiff's FOIA claims insofar as they relate to all unperfected Items. The agency also moves for summary judgment on the adequacy of its search and its segregability review of the materials it produced in response to the perfected Items. Plaintiff vigorously opposes Defendant's Motion. The court now turns to resolve the parties' disputes.

## III. LEGAL STANDARD

Defendant moves to dismiss Plaintiff's unperfected requests under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to exhaust administrative remedies. It is settled in this Circuit, however, that exhaustion of administrative remedies in a FOIA case is not a jurisdictional bar to judicial review and, thus, is not a defense properly presented by a Rule 12(b)(1) motion. *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003) (stating that the "exhaustion requirement is not jurisdictional because the FOIA does not unequivocally make it so"). Where, as here, a defendant files a motion to dismiss under Rule 12(b)(6) and "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Accordingly, the court treats Defendant's Motion as one for summary judgment. *See Rosenberg v. U.S. Dep't of Immigration*

*and Customs Enf't*, 956 F. Supp. 2d 32, 36 (D.D.C. 2013); *Barouch v. U.S. Dep't of Justice*, 962 F. Supp. 2d 30, 48 n.6 (D.D.C. 2013).

### A.    Standard for Motion for Summary Judgment

Courts are to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  To make this determination, the court must "view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party, and a fact is "material" only if it is capable of affecting the outcome of litigation.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  A non-material factual dispute must not prevent the court from granting summary judgment.  *See id.* at 248–50.

Most FOIA cases are appropriately decided on motions for summary judgment.  *See Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  A court may award summary judgment in a FOIA case by relying on the information included in the agency's affidavits or declarations if they are "relatively detailed and non-conclusory," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted), and describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

To prevail on a motion for summary judgment, the agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements."  *Goland v. CIA*, 607 F.2d 339, 352 (D.C.

Cir. 1978). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

### B.    FOIA Requests for IRS Information

FOIA provides that an agency must promptly provide records in response to a request that (1) "reasonably describes" the records sought, and (2) "is made in accordance with [the agency's] published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A). If a party believes that the agency has not responded adequately, then that party must exhaust his administrative remedies before filing suit in federal court. *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004); *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990). FOIA's administrative scheme "favors treating failure to exhaust as a bar to judicial review." *Wilbur*, 355 F.3d at 677 (internal quotation marks omitted). "An agency's obligations commence upon receipt of a *valid* request; failure to file a perfected request therefore constitutes failure to exhaust administrative remedies." *Dale v. IRS*, 238 F. Supp. 2d 99, 103 (D.D.C. 2002).

The IRS will process only those FOIA requests that fully comply with the requirements of the Internal Revenue Code and its attendant regulations. 26 C.F.R. § 601.702(c)(4)(i). If an agency receives a request that falls short of the statutory or regulatory requirements, then "it is not obligated to process the request," and if a "requester nonetheless files suit, [then] she is said to have failed to exhaust her administrative remedies, and she must file a perfected request before a court will compel the agency to respond." *Kalu v. IRS*, No. 14-9938, 2015 WL 4077756, at *4 (D.D.C. July 1, 2015). At the same time, if the agency determines that a requester has not met

those legal requirements when making a request for information, then the agency has an obligation to inform the requester of the deficiencies in her request. 26 C.F.R. § 601.702(c)(1)(i).

Two provisions of the Internal Revenue Code are relevant to Plaintiff's FOIA Request. The first pertains to requests for tax returns and their attachments. The Internal Revenue Code defines the term "return" to include

> any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed.

26 U.S.C. § 6103(b)(1). Requests for returns are governed by 26 C.F.R. § 601.702(d), which requires requesters to submit an IRS Form 4506, "Request for Copy or Transcript of Tax Form." The second relevant Code provision pertains to requests for a broader category of materials called "return information." As pertinent here, the Internal Revenue Code defines "return information" to mean:

> [A] taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense[.]

26 U.S.C. § 6103(b)(2)(A). Requests for return information are subject to the detailed procedures set forth at 26 C.F.R. § 601.702(c).

## IV.    DISCUSSION

The parties' motions present three distinct issues:  (1) whether Plaintiff perfected his outstanding requests and, thereby, exhausted his administrative remedies; (2) whether Plaintiff adequately pleaded his Privacy Act claim; and (3) whether Defendant is entitled to summary judgment on the adequacy of its search and its segregability review as to Plaintiff's perfected and partially perfected requests.  The court addresses each issue in turn below.

### A.    Whether Plaintiff Perfected Items 1, 2, 4, 5, 7, and 8

The court begins with whether Plaintiff fully perfected Items 1, 2, 4, 5, 7, and 8.  As noted earlier, if Plaintiff has failed to perfect an Item, then he has failed to exhaust administrative remedies and the court must enter judgment in favor of Defendant as to that Item.  *See Kalu*, 2015 WL 4077756, at *4.  For ease of discussion, the analysis that follows groups related Items together by subject matter and addresses the parties' contentions concerning each grouping in the order presented in the parties' briefing.  Further, the court begins its discussion of each Item grouping by recounting its history.

### 1.    *Items 1 and 2: Plaintiff's Request for the Tax Examination File, Tax Return, and Return Information of The Samuel R. Goldstein Estate*

The court begins with whether Plaintiff perfected his request for the materials referenced in Items 1 and 2.  In those requests, Plaintiff seeks two categories of documents relating to The Samuel R. Goldstein Estate (the "Goldstein Estate" or "the Estate").  Samuel R. Goldstein is Plaintiff's now-deceased father.  Item 1 seeks the "entire Examination Division Administrative File for the estate tax audit conducted by the IRS," and Item 2 demands the Estate's "tax return" and "return information."  *See* Am. Compl., ECF No. 11 [hereinafter Am. Compl.], Ex. 2-1, ECF No. 11-2, at 2–7 [hereinafter FOIA Request], at 4.  In its initial summary judgment motion, Defendant took the position that Plaintiff only perfected his interest in a certain subset of

documents within Item 1 and released only those documents. Specifically, Defendant found that Plaintiff had demonstrated a material interest in the Goldstein Estate's tax examination file, but only as to the year of his father's death (2000) and, accordingly, produced only those records. *See Goldstein I*, 174 F. Supp. 3d at 48–50. As to Item 2, Defendant asserted that it was not required to produce any records because that Item sought only "tax returns" of the Estate and Plaintiff already had received those returns pursuant to a non-FOIA procedure. *See id.* at 52.

The court denied Defendant's Motion and required the agency to provide Plaintiff an opportunity to cure the deficiencies in his request for Items 1 and 2. As to Item 1, the court found that Defendant had failed to "notify Plaintiff 'in what respect the request' '[was] deficient,'" as required under 26 C.F.R. § 601.702(c)(1)(i). *Id.* at 50–51. The court therefore ordered Defendant to "advise Plaintiff in writing 'in what respect' his request is deficient under 26 C.F.R. §§ 601.702(c)(1)(i), 601.702(c)(4)(i), thereby giving him an opportunity to perfect the request and exhaust his remedies." *Id.* at 51. The court remanded Item 2 for the same reason, and further concluded that the IRS was wrong to interpret Item 2 as seeking only tax returns. *See id.* at 52. Instead, the court determined that Plaintiff's request for "return information" as part of Item 2 encompassed a broader category of materials than merely the Estate's tax returns and ordered the agency to consider Plaintiff's right to the Estate's "return information." *Id.*

Following the court's decision, Defendant afforded Plaintiff an opportunity to perfect Items 1 and 2. By letter dated April 21, 2016, the agency invited Plaintiff to provide further documentation supporting his interest in the Estate's examination file for years other than 2000, as well as to specify the "return information" he sought in Item 2. *See* Rowe Decl. ¶ 5; Rowe Decl., Ex. A, ECF No. 52-6 [hereinafter Rowe Decl., Ex. A], at 1–2. Plaintiff, in turn, submitted

documents purporting to establish his material interest in the requested records.  *See* Rowe Decl. ¶ 6.

After reviewing Plaintiff's response, the IRS notified Plaintiff that he had perfected Items 1 and 2, but only in part.  *See id*. ¶ 8; Rowe Decl., Ex. C, ECF No. 52-8 [hereinafter Rowe Decl., Ex. C], at 1–6.  With respect to Item 1, the agency explained that, based on the materials provided, Plaintiff had demonstrated a material interest in determining whether (1) "he ha[d] received a proper share" of the Estate upon settlement, and (2) he had actionable claims "against estate and trust fiduciaries for breaches of fiduciary duties" associated with administering the Estate.  Rowe Decl., Ex. C at 4.  In light of those interests, Defendant concluded, Plaintiff was entitled to receive the portions of the examination file that pertained to "Samuel R. Goldstein's year of death or a year subsequent to [his] year of death," but not to the years *preceding* his death.  *Id*.  Defendant produced 53 additional pages of tax records in full in response to Item 1.  *Id*.  With respect to Item 2, the agency explained that the "return information" Plaintiff sought was already encompassed by documents responsive to, and produced under, Item 1.  *Id*. at 5.  Therefore, the agency produced no additional records in response to Item 2.[2]  Ultimately, the IRS afforded Plaintiff a second opportunity to perfect Items 1 and 2 as to the tax years before his father's death, but Plaintiff's supplemental submission did not satisfy the agency.  Rowe Decl., Ex. D., ECF No. 52-9 [hereinafter Rowe Decl., Ex. D], at 1.  By letter dated December 15, 2016 (the "December 2016 Letter"), the agency notified Plaintiff that it had reviewed his supplemental submissions and had determined that it would not produce any additional documents responsive to Items 1 and 2. *See* Rowe Decl. ¶ 9; Rowe Decl., Ex. D at 1–2.

---

[2] Plaintiff does not dispute the IRS' determination that the information he seeks under Item 2 is encompassed by information received under Item 1.

With the history of Items 1 and 2 in hand, the court now turns to the parties' present dispute, i.e., whether Plaintiff perfected his request for the Estate's tax examination file and its return and return information for the years preceding his father's passing. Section 6103 of Title 26 ("Section 6103") makes returns and return information presumptively confidential, and bars disclosure of such information except as authorized by the IRS code. 26 U.S.C. § 6103(a); *Tax Analysts v. IRS*, 117 F.3d 607, 611 (D.C. Cir. 1997). To establish his right to access records concerning his father's Estate, Section 6103 requires Plaintiff to show that (1) he is an "heir at law, next of kin, or beneficiary under the will, of the decedent," and (2) he has "a material interest which will be affected by information contained therein." 26 U.S.C. § 6103(e)(1)(E). The parties agree that Plaintiff is an heir at law and beneficiary of the estate, and thus satisfies the first element of Section 6103(e)(1)(E). Def.'s Mot. to Dismiss & Mot. for Summ. J., ECF No. 19, Mem. in Supp., ECF No. 19-1 [hereinafter Def.'s First Mot.], at 10–11. Their dispute centers on the second element—whether Plaintiff has a "material interest" in the requested tax records.

Critical to resolving that contest is the question of which party bears the burden of proof on summary judgment concerning the "material interest" showing. Does the requester bear the burden of proving he has a material interest, or must the IRS prove the absence of such an interest? Plaintiff insists that Defendant "bears the burden of establishing that Plaintiff has failed to perfect his FOIA requests." Pl.'s Opp'n to Def.'s Second Mot. to Dismiss & Mot. for Summ. J., ECF No. 55 [hereinafter Pl.'s Opp'n], at 27. The court disagrees. Although it is true that, because the failure to exhaust is treated as an affirmative defense, the burden of proof ordinarily rests upon the defendant, *cf. Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997), applying that principle here would be inconsistent with the statutory and regulatory scheme, as well as defy commonsense. Section 6103 explicitly protects the confidentiality of taxpayer records *unless* release is authorized

under a provision of the Internal Revenue Code. *See* 26 U.S.C. § 6103(a). With respect to the tax records of an estate or trust, Section 6103(e) authorizes disclosure if the requester has the requisite relationship to the estate or trust *and* "if the Secretary finds that [the requester] has a material interest which will be affected" by the records. *Id.* §§ 6103(e)(1)(E)(ii), 6103(e)(1)(F)(ii). Thus, by its very terms, Section 6103(e) requires the requester to come forward with information in order to convince the IRS that he has a material interest in the estate's or trust's tax records and thus is entitled to such records. That is precisely how the IRS interprets Section 6103(e). According to the agency's Internal Revenue Manual, Section 6103(e) requires that "*the requester demonstrate that he or she has a material interest in the information to be disclosed.*" *See* I.R.M. § 11.3.2.2.3 (emphasis added); *see also id.* § 11.3.2.4.7(2) ("Any heir at law, next of kin, or beneficiary who establishes a material interest which will be affected by the return or return information may also receive returns and return information."); *id.* § 11.3.4.8(2) (stating a trust beneficiary may receive "returns and return information of the trust, but only if the beneficiary shows a material interest which will be affected by the tax information"). Thus, at the administrative level, Section 6103(e) operates to presumptively shield taxpayer information from disclosure unless and until the requester supplies the agency with convincing evidence of a material interest in that information. To flip that burden in litigation, and require the agency to prove the *absence* of a material interest, would be inconsistent with Section 6103's text and its purpose of restricting access to taxpayer information. *See Church of Scientology of California v. IRS*, 484 U.S. 9, 17 (1987); *see also Britt v. IRS*, No. 77-1325, 1979 WL 1400 at *3 (D.D.C. 1979) ("[W]hether plaintiff has a material interest in the withheld information within the meaning of section 6103(e)–the Court concludes that the ultimate burden is on plaintiff to take herself out from under the threshold prohibition of section 6103(a)."). It also would make little sense. The agency cannot reasonably be expected to

develop the factual record necessary to show the absence of a material interest; after all, the requester has access to the relevant evidence, not the agency, and thus is in the best position to make the requisite statutory showing. Accordingly, in deciding whether Plaintiff perfected his requests for Items 1 and 2, the court asks whether Plaintiff met his burden of showing that he has "a material interest which will be affected by [the requested] information." 26 U.S.C. § 6103(e)(1)(E).

He has not. Plaintiff has not established a material interest in the Estate's tax records that reach back to years before his father's death. Indeed, the court has searched in vain throughout Plaintiff's briefs for a cogent argument as to why the IRS' determination that he lacks a material interest is incorrect. In place of advancing such an argument, Plaintiff merely complains that he "is unable to discern" how the agency determined the extent of his material interest, "beg[ging] further inquiry into what parts of the entire IRS estate tax audit file Plaintiff does not have a material interest in." Pl.'s Opp'n at 29–31. Plaintiff's request for "further inquiry," however, misapprehends where the burden lies in establishing a perfected request. For the reasons already discussed, Plaintiff bears the burden of proving that he has a material interest in the requested records; merely questioning the sufficiency of the IRS' explanation for denying him access will not do. Plaintiff therefore has failed to show that he perfected his request for the Estate's tax records relating to tax years before his father's death.

Accordingly, the court grants Defendant's Motion as to Plaintiff's claims concerning the unperfected subparts of Items 1 and 2. *See Dale*, 238 F. Supp. 2d at 103–05.

> 2. *Item 4: Fiduciary Income Tax Returns (Form 1041) for The Samuel R. Goldstein Living Trust*

The court reaches a different result concerning Item 4. In that request, Plaintiff seeks the fiduciary income tax returns for The Samuel R. Goldstein Living Trust (the "Living Trust" or "the

Trust"). *See* FOIA Request at 4. To perfect Item 4, Plaintiff must demonstrate that (1) he is a beneficiary of the Trust, and (2) he has a material interest in the Trust's fiduciary tax returns. 26 U.S.C. § 6103(e)(1)(F). In *Goldstein I*, the court determined that Plaintiff was a "beneficiary" of the Living Trust, but remanded the request to the agency to determine whether Plaintiff had a "material interest" in the Trust's tax records. 174 F. Supp. 3d at 52–53. Accordingly, the court denied Defendant's Motion as to Item 4 and directed Defendant to reconsider Plaintiff's request. *Id.*

Defendant—somewhat surprisingly—treated as advisory the court's finding that Plaintiff qualified as a beneficiary of the Living Trust. The agency instead determined Plaintiff had *failed* to establish his legal relationship to the Living Trust based on Section 4.2(b) of the Eighth Amendment to the Samuel R. Goldstein Living Trust, the legal instrument by which Samuel Goldstein disposed of the Living Trust's assets upon his death. Section 4.2(b) provides that "[u]pon the [death] of Grantor [Samuel Goldstein], if Grantor's son, [Richard H. Goldstein,] . . . is then living . . . one-half (1/2) of the Balance of the Trust Estate remaining after the disposition . . . [shall] be held in trust for Richard H. Goldstein." *See* Am. Compl., Ex. 2-1, ECF No. 11-2, at 18–27 [hereinafter Eighth Amendment to Living Trust], § 4.2(b). Defendant, focusing on the fact that, upon Samuel Goldstein's death, Plaintiff's share of the Trust assets would be held in a "separate trust for [his] benefit until his death," interpreted Section 4.2(b) as designating the separate *trust* established for Plaintiff's benefit as the actual beneficiary of the Living Trust, and not Plaintiff himself. *See* Rowe Decl., Ex. C at 7 (citing Eighth Amendment to Living Trust § 4.2(b)); Rowe Decl., Ex. D at 1–2. Thus, because Plaintiff lacked the requisite relational nexus to the Living Trust, the agency also concluded that Plaintiff could not demonstrate a material interest in the Living Trust's tax information sufficient to warrant disclosure.

Defendant's conclusion that Plaintiff was not a beneficiary of the Trust is incorrect. Section 6103(e)(1)(F)(ii) provides that, "in the case of the return of a trust," tax records relating to the trust may be disclosed to "any beneficiary of such trust, but only if the Secretary finds that such beneficiary has a material interest which will be affected by information contained therein." 26 U.S.C. § 6103(e)(1)(F)(ii). The Internal Revenue Code does not define "beneficiary" for purposes of Section 6103(e). The Internal Revenue Manuel, therefore, directs the agency to evaluate the requester's relationship to the taxpayer under applicable state law. *Cf.* I.R.M. § 11.3.2.4.8(4) (stating that a person with a "reversionary interest in a trust" will be considered a beneficiary if accorded that status "by the law of the state where the trust was established"); *id.* § 11.3.2.4.9(3) ("Generally, we look to appropriate state law for the definition of a guardian, trustee or committee of the estate of an incompetent."); *id.* § 11.3.2.4.7(3) (providing that, in the case of an estate, the requester must establish his relationship to the estate as "an administrator, executor, trustee, heir at law, or next of kin under applicable state law"); *id.* § 11.3.2.4.3(1), (7) (referring to state law with regard to a corporation's returns). Here, the Living Trust was formed under Missouri state law, which adopts the Uniform Trust Code's definition of a beneficiary—"a person that has a present or future beneficial interest in a trust, vested or contingent."[3] Mo. Ann. Stat. § 456.1-103(3)(a). Plaintiff easily meets that broad definition. At the time his father executed the Eighth Amendment to the Living Trust, Plaintiff possessed a future beneficial interest in the trust property. That interest vested upon his father's death. And so, at the time he requested the Living Trust's tax returns, i.e., after his father's death, Plaintiff was a beneficiary of the Trust

---

[3] Although the Eighth Amendment to the Living Trust was executed in 2000, before the effective date of Missouri's adoption of the Missouri Uniform Trust Code, the Missouri Uniform Trust Code applies to all trusts formed before the effective date, unless otherwise stated. Mo. Rev. Stat. § 456.11-1106(1) (2005); *see also Brams Tr. #2 v. Haydon*, 266 S.W.3d 307, 311 (Mo. Ct. App. 2008).

under Missouri law, irrespective of the fact that he was designated to receive the Trust's assets through an intermediate trust created for his benefit.

Defendant's reason for not recognizing Plaintiff as a beneficiary of the Trust does not withstand scrutiny. Without citing to any state law, the IRS required Plaintiff to establish that he was a "*direct* beneficiary" of the Living Trust. *See* Rowe Decl., Ex. C at 6 (emphasis added). That demand, however, conflicts with the plain text of Section 6103(e)(1)(F)(ii), which allows "*any* beneficiary*" to receive a trust's tax records, so long as the beneficiary establishes a material interest in those records. 26 U.S.C. § 6103(e)(1)(F)(ii) (emphasis added). By requiring Plaintiff to establish a "direct" beneficial interest in the Trust, the IRS construed the relational element of Section 6103(e)(1)(F)(ii) too narrowly. Moreover, the IRS appears to have believed that trust law distinguishes between "direct beneficiaries" and "indirect beneficiaries," and that Plaintiff qualifies as an "indirect beneficiary" because he received the Trust's assets through an intermediary living trust. The Uniform Trust Code, and thus Missouri law, does not, however, distinguish between direct and indirect beneficiaries—it speaks in terms of beneficiaries. *See* UNIF. TRUST CODE § 103 cmt. ("In addition to living and ascertained individuals, beneficiaries may be unborn or unascertained. . . . The term 'beneficiary' includes not only beneficiaries who received their interests under the terms of the trust but also beneficiaries who received their interests by other means, including by assignment, . . . upon the failure of an interest, . . . or upon termination of the trust."). Further, both the Uniform Trust Code, as well as the Restatement of Trusts, take a broad view of who qualifies as a beneficiary, thus undermining Defendant's narrow interpretation. *See id.;* RESTATEMENT (SECOND) OF TRUSTS § 127 ("A person is a beneficiary of a trust if the settlor manifests an intention to give him a beneficial interest."). In short, under

Missouri law, Plaintiff was a beneficiary of his father's Living Trust, and Defendant's conclusion to the contrary was incorrect.

As Defendant erred in finding Plaintiff was not a beneficiary of the Living Trust, the court denies summary judgment as to Item 4 and directs Defendant, once again, to consider whether Plaintiff has met his burden of establishing that he has a material interest in the Trust's tax returns. In an effort to avoid another round of lengthy briefing on the issue, the court wishes to be perfectly clear: The only question remaining for Defendant is the extent to which Plaintiff has demonstrated a material interest in the Trust's fiduciary tax returns. The court notes that the IRS already determined that Plaintiff has a material interest in the *Estate's* fiduciary income tax returns for the years 2000–2006 (Item 3), *see* Rowe Decl. ¶ 11, and so it stands to reason that Plaintiff also has a material interest in the Trust's fiduciary returns for that same period. The court, however, leaves it to Defendant to make a final determination as to Plaintiff's interest in the Trust's fiduciary returns for the 2000–2006 tax years.

3.  *Items 5 and 7: Income Tax Audits and Tax Returns with Respect to The SRG Investment Limited Partnership*

Defendant fares better with regard to Items 5 and 7. Items 5 and 7 refer to income tax audit files and tax returns, respectively, for The SRG Investment Limited Partnership ("SRG"), an entity established to hold and manage Plaintiff's family's assets. *See* FOIA Request at 4–5. SRG had two partners: (1) the Living Trust, which served as a general and limited partner and held more than 99% of the partnership interest, and (2) the Carol R. Jones Living Trust, Plaintiff's sister's living trust, which served as a special limited partner and held less than 1% of the partnership interest. *See* Am. Compl., Ex. 2-4, ECF No. 11-5, at 33. To perfect Items 5 and 7, Plaintiff must establish that he is "a member of [the] partnership during any part of the period covered" in the request. 26 U.S.C. § 6103(e)(1)(C). The IRS originally refused to disclose SRG's tax returns and

return information on the ground that Plaintiff was not "a general partner, limited partner, or special limited partner," but the court found that the IRS had not considered Plaintiff's argument that he was an "indirect" partner. *Goldstein I*, 174 F. Supp. 3d at 53–54. That argument relied on a different provision of the Internal Revenue Code, 26 U.S.C. § 6231, which defines "partnership" to mean (a) "a partner in the partnership," or (b) "any other person whose income tax liability under subtitle A [of the Code] is determined in whole or in part by taking into account directly or indirectly partnership items of the partnership." 26 U.S.C. § 6231(a)(2). Accordingly, the court denied Defendant's Motion as to Items 5 and 7 and directed Defendant to determine whether the definition of "partner" contained in Section 6231(a)(2) should be applied to determine whether Plaintiff has a "perfectable" interest in the SRG-related tax files. *See Goldstein I*, 174 F. Supp. 3d at 54.

Defendant subsequently determined that the definition of "partner" contained in Section 6231(a)(2) does not apply to requests under Section 6103. Defendant so concluded because Section 6231(a)(2)'s definition of "partner" only applies when a partnership is subject to an administrative or judicial proceeding commenced under the Tax Equity and Fiscal Responsibility Act ("TEFRA"). Rowe Decl., Ex. A at 3. As a result of its reading of the statute, the agency gave Plaintiff an opportunity to demonstrate either that he fit the narrower definition of "partner" found in Section 6103(e)(1)(C), i.e., "a member of the partnership," or that SRG was subject to a TEFRA proceeding during the requested years. *Id*. After reviewing Plaintiff's response, the agency concluded Plaintiff had failed to demonstrate he was a "partner" in either respect and, accordingly, informed Plaintiff in the December 2016 Letter that he had not perfected his requests under Items 5 and 7. Rowe Decl., Ex. D at 1–2.

The court agrees with Defendant that Plaintiff has not demonstrated he was a "partner" of SRG such that he is entitled to its partnership income tax audits and tax returns. First, Plaintiff was not a "direct partner" in SRG because he did not hold any percentage of the partnership interest. *See Goldstein I*, 174 F. Supp. 3d at 54. Second, it does not matter whether Plaintiff meets the broader definition of "partner" contained in Section 6231(a)(2) because the court agrees with Defendant that Section 6231(a)(2)'s definition does not apply to Plaintiff's request under Section 6103. By its own terms, Section 6231(a)(2) expressly limits the application of its definition of "partner" to "this subchapter," i.e., Chapter 63, Subchapter C, of the United States Code. 26 U.S.C. § 6231(a)(2). Section 6103 does not reside in the same subchapter as Section 6231, meaning Section 6231(a)(2)'s definition cannot apply to Section 6103. Instead, Section 6103—which does not contain its own definition of "partner," *see id*. § 6103—relies on the general definitions provision of the Internal Revenue Code, *see id*. § 7701, to define that term. Section 7701, which applies to all provisions of the Code unless "otherwise distinctly expressed or manifestly incompatible with [its] intent," provides that:

> [t]he term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization.

*Id*. Plaintiff was not a "partner" of SRG under that definition, and he has he not identified any reason why applying Section 7701 in this context would be otherwise "incompatible" with the Code. The IRS therefore properly determined that he cannot perfect his requests for Items 5 and 7.

Plaintiff urges the court to apply the definition of "partner" in Section 6231(a)(2) to avoid, as he characterizes it, inconsistent interpretations of the Internal Revenue Code. *See* Pl.'s Opp'n

at 33–34. While Plaintiff is correct that courts must interpret the provisions of the Internal Revenue Code to be internally consistent, the very purpose of Section 7701 is to provide such consistency. And there is nothing inconsistent about applying a different definition of "partner" in the TEFRA context when Congress so provides. Thus, there is simply nothing to Plaintiff's contention that applying the definition of "partner" contained in Section 7701 to the nondisclosure provisions contained in Section 6103 would create impermissibly inconsistent results.

Plaintiff also points to *Abelein v. United States*, 323 F.3d 1210 (9th Cir. 2003), to argue that he should be considered a partner for purposes of Items 5 and 7, but his reliance on that case is misplaced. That case concerned whether certain individuals challenging the IRS' disclosure of their tax return information *in the context of a TEFRA proceeding* met the definition of a partner contained in Section 6231 such that disclosure was appropriate. *Id*. at 1215. *Abelein* is thus wholly inapplicable in this context.

Accordingly, the court finds Plaintiff cannot perfect his requests for Items 5 and 7 and will enter judgment in favor of Defendant as to claims concerning those Items.

### 4. Item 8: Submissions by Attorney David Capes

The court turns next to the parties' dispute concerning Item 8. Item 8 seeks production of a November 2008 submission to the IRS made by Plaintiff, through his then-lawyer David Capes, which alleged that Plaintiff's sister, Carol Jones, and others had conspired to evade tax payments as to Plaintiff's father's estate and related entities (the "Capes Disclosure"). Plaintiff filed the Capes Disclosure on the public record in a companion case, *see Goldstein v. Treasury Inspector Gen. for Tax Admin.*, No. 14-2189 (D.D.C), ECF No. 69-6, at 42–65 [hereinafter Capes Disclosure], and so the court, as it is permitted to do, takes judicial notice of the Capes Disclosure. *See Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981) (taking judicial notice of

19

Complaint filed in related proceeding). Prior to his death, Samuel Goldstein established SRG Investment Family Limited Partnership (the "FLP"), which had two members, Goldstein himself and Carol Jones, Plaintiff's sister. Capes Disclosure at 42. The FLP was managed by SRG Management Company, LLC ("SRG Management"). *Id.* Carol Jones became the managing member of SRG Management upon her father's death. *Id.* at 43. Item 8 is a request for documents "relat[ed] to any and all submissions made by [Plaintiff's then-lawyer David Capes,]" to IRS employees who "specifically received information or documentation regarding possible civil and criminal tax fraud" involving his father's estate and related entities and individuals, in particular the FLP, SRG Management, and Jones. *See* FOIA Request at 5. In short, the request targets information that Plaintiff submitted to the IRS, through his counsel, as a whistleblower alleging tax evasion in connection with the settlement of his father's estate.

In its original summary judgment motion, Defendant asserted that documents responsive to Item 8 were protected from disclosure as third-party "return information" under Section 6103. Plaintiff had not perfected his request for such return information, the agency explained, because he failed either to provide a waiver from the implicated third parties, or to demonstrate a sufficient material interest in their return information. *See Goldstein I*, 174 F. Supp. 3d at 55. After considering the parties' arguments, the court remanded Plaintiff's request for two reasons: (1) it disagreed with the IRS' determination that all of the requested materials, particularly information concerning the times and dates of meetings that Capes had with IRS agents, constituted third-party "return information"; and (2) the IRS' own Internal Revenue Manual exempted documents turned over by a whistleblower—as appeared to be the case for many of the documents responsive to Item 8—from the general disclosure prohibition reflected in Section 6103. *See id.* at 55–56.

On remand, the IRS abided by one part of the court's ruling, but once again viewed another part to be merely advisory. Pursuant to the court's order, the IRS reconsidered whether Section 6103 prohibits production of the Capes Disclosure, found that it did not, and therefore produced those records to Plaintiff. *See* Rowe Decl., Ex. C at 8–9. The agency did not, however, heed the court's determination that documents pertaining to the timing and location of meetings between Plaintiff's counsel and the IRS did not qualify as return information; instead, the agency found that the records met the statutory definition of "return information" and decided not to search for or disclose *any* additional information responsive to Item 8 on that basis. *See id*. at 8; Rowe Decl., Ex. D at 1–2.

Though Defendant would have done better to seek reconsideration of the court's decision, instead of making a unilateral determination to the contrary, the court now agrees that, except for the Capes Disclosure which Defendant already has produced, Plaintiff's request for Item 8 calls for the production of "return information" protected from disclosure. *See Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739–40 (holding that the law-of-the-case doctrine does not prevent courts from reconsidering their prior holdings). Section 6103 defines "return information" broadly to include:

> [A] taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, *whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing,* or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense[.]

26 U.S.C. § 6103(b)(2)(A) (emphasis added). By requesting in Item 8 all information relating to

his whistleblower complaint, Plaintiff necessarily asks for records that would reveal "whether [a] taxpayer's return was, is being, or will be examined or subject to other investigation or processing." Records responsive to Item 8 would show whether, and to what extent, the IRS investigated the actions of the taxpayers identified in the Capes Disclosure. That includes documents relating to the timing and locations of meetings that Capes had with IRS representatives, which, if disclosed, would reveal the existence of an agency investigation or potential investigation into those taxpayers. Such information constitutes protected "return information."

Plaintiff's argument to the contrary—that the information at issue cannot be "return information" because its disclosure would only reveal the *existence* of an investigation, rather than the *content* of an investigation, *see* Pl.'s Opp'n at 36—misses the mark. Section 6103(b)(2)(A) prohibits the disclosure of information tending to reveal the existence of an investigation—"was, is being, or will be examined"—and not merely the contents of an investigation. *See Snider v. United States*, 468 F.3d 500, 507 (8th Cir. 2006); I.R.M. § 9.3.1.2(3)(c) (listing "the fact that a person is under investigation" as falling within the "very broad" definition of return information). This is not a case where Defendant seeks to shield from disclosure the existence of an investigation into a broad category of unnamed and unidentifiable individuals, *cf. Cause of Action v. Treasury Inspector Gen. for Tax Admin.*, 70 F. Supp. 3d 45 (D.D.C. 2014), but instead, one that concerns a potential investigation into specific individuals and entities readily identifiable by Plaintiff. Absent a perfected request, Defendant's disclosure of the materials described by Item 8 would violate Section 6103.[4]

---

[4] Plaintiff's reliance on *Branch Ministries v. Richardson*, 970 F. Supp. 11 (D.D.C. 1997), and *Cause of Action v. Treasury Inspector General for Tax Administration*, 70 F. Supp. 3d 45 (D.D.C. 2014), is misplaced. *See* Pl.'s Opp'n at 36. Simply put, neither case supports Plaintiff's position that disclosing the mere existence of a tax investigation is permissible under Section 6103.

The court will not, however, enter judgment in Defendant's favor as to Item 8 at this time because there remains a factual gap in the record. The court cannot determine from the present record which specific taxpayers were the subject of the meetings at issue and, correlatively, whether Plaintiff can perfect his request as to any meeting. Say, for instance, a meeting concerned *only* a taxpayer as to whom Plaintiff can satisfy Section 6103's relational requirement, e.g., Plaintiff's father's estate or the Living Trust. Plaintiff could potentially access those records in the event that he demonstrates a "material interest" in the existence of that meeting. On the other hand, if a meeting concerned multiple taxpayers and Plaintiff is unable to perfect his request as to any one of those taxpayers, then Section 6103 would bar disclosing the existence of that meeting— the IRS cannot possibly separate information about the time and location of a single meeting that implicates both a "perfectable" taxpayer and an "unperfectable" one. Thus, if Defendant determines that disclosing the existence of follow-up meetings, if any occurred, would necessarily divulge the existence of an investigation into a third-party taxpayer for whom Plaintiff lacks a perfectable interest, then it shall provide the court with a declaration to that effect and will have no further obligations to Plaintiff concerning Item 8. On the other hand, in the event that a meeting concerns only a taxpayer as to whom Plaintiff can perfect a request, then Defendant shall promptly allow Plaintiff to perfect his request and, if he does so, produce the information.

\* \* \*

In conclusion, the court finds that Plaintiff failed to perfect (1) Items 1 and 2 with respect to the tax examination file and return and return information of his father's Estate for years prior to 2000, and (2) Items 5 and 7 in full. The court therefore grants summary judgment in favor of Defendant as to the claims pertaining to those Items. *Kalu*, 2015 WL 4077756, at \*4. The court

remands Items 4 and 8 to the agency for further consideration consistent with this Memorandum Opinion.

### B. Whether Plaintiff Adequately Pleaded a Privacy Act Claim

In addition to his claims under FOIA, Plaintiff also brings a claim under the Privacy Act, 5 U.S.C. § 552a, alleging that he is entitled to the information he seeks in Item 8 because it concerns his whistleblower disclosure. Pl.'s Reply in Supp. of Cross-Mot. for Summ. J., ECF No. 64, at 23. As relevant here, the Privacy Act provides that each "agency that maintains a system of records" must, "upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof in a form comprehensible to him." *Sussman v. U.S. Marshals Serv*., 494 F.3d 1106, 1119 (D.C. Cir. 2007) (quoting 5 U.S.C. § 552a(d)(1)). In *Sussman*, the D.C. Circuit held that the Privacy Act guarantees requesters "access only to their *own records*, not to *all information* pertaining to them that happens to be contained in a system of records." *Id*. at 1120 (emphasis added). Thus, "[f]or an assemblage of data to qualify as one of [Plaintiff's] records, it must not only contain his name or other identifying particulars but also be 'about' him. . . . [and] must actually describe him in some way." *Id*. at 1121.

Plaintiff's Privacy Act claim fails because the information that Plaintiff seeks in Item 8 is not "about" him. Item 8 seeks documents "relative to any and all submissions made by [Plaintiff's then-lawyer David Capes,]" to IRS employees who "specifically received information or documentation regarding possible civil and criminal tax fraud" *of various third-party taxpayers*. FOIA Request at 5. Although Plaintiff's whistleblowing activity may have generated records responsive to Item 8, those records decidedly do not "pertain" to Plaintiff. If those records exist, then they are "about" the taxpayers who Plaintiff alleged violated the law, namely, his sister and

others whom he claims conspired to evade tax obligations. Plaintiff's assertion that he is entitled to information responsive to Item 8 under the Privacy Act is thus squarely foreclosed by binding precedent. *See Sussman*, 494 F.3d at 1121. Accordingly, the court grants Defendant's Motion as to Plaintiff's Privacy Act claim.

### C. Whether Defendant Satisfied its Obligations to Disclose the Materials Related to Plaintiff's Perfected Requests

Defendant moves for summary judgment with respect to Item 3, in full, and to those perfected subparts of Items 1 and 2 on the basis that it (1) conducted an adequate search for records responsive to those requested Items, and (2) produced the segregable portions of such records.[5] *See* Def.'s Second Mot. to Dismiss & Mot. for Summ. J., ECF No. 52, Mem. in Supp., ECF No. 52-1 [hereinafter Def.'s Second Mot.], at 19–26.

FOIA requires an agency to conduct a search for responsive records that is "reasonably calculated to discover the requested documents." *SafeCard Servs.*, 926 F.2d at 1201. "In general, the adequacy of a search is 'determined not by the fruits of the search, but by the appropriateness of [its] methods.'" *Hodge v. FBI*, 703 F.3d 575, 579 (D.C. Cir. 2013) (alteration in original) (quoting *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)). In order to prevail on summary judgment, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68. However, if review of the record raises doubt as to whether the agency searched all files that likely contain responsive information, "particularly in view of well defined requests and positive indications of overlooked materials," then the court must deny summary judgment. *See Aguiar v. DEA*, 865 F.3d 730, 738 (D.C. Cir.

---

[5] Defendant also moves for summary judgment as to Item 8, but in light of the court's ruling remanding that Item for further consideration, the court does not reach Defendant's Motion as to that request.

2017) (internal quotation marks omitted). FOIA further requires that "[a]ny reasonably segregable portion of [the] record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). An agency must provide a "detailed justification" and not just make "conclusory statements" to support its segregability determination. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). Agencies, however, "are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which can be overcome by contrary evidence produced by the requester. *Sussman*, 494 F.3d at 1117.

### 1.    Items 1 and 2

The court begins with Items 1 and 2. Defendant's original Motion relied on the declaration of Kenneth Mills, an IRS Disclosure Specialist, which provided a description of the search method employed by Defendant to locate records responsive to Item 1. *See* Def.'s First Mot. at 18; Def.'s First Mot., Ex. 3, ECF No. 19-3 [hereinafter Mills Decl.]. Defendant's renewed Motion does the same. *See* Def.'s Mot. at 20–21. In his declaration, Mills explains that, after running searches in the agency's main records database—the IRS Integrated Data Retrieval System ("IDRS")—using the Estate's unique taxpayer identification number, he learned that an IRS employee in another division had possession of the tax examination file of the Estate. *See* Mills Decl. ¶¶ 5–6, 10–11. Mills obtained the examination file from that employee, and then proceeded to determine what portion of those files Plaintiff was entitled to receive. *See Goldstein I*, 174 F. Supp. 3d at 48–49. In the present round of briefing, Plaintiff offers no real argument concerning the adequacy of Defendant's search as to Item 1; he simply rehashes his claim that he is entitled to the tax records for the years preceding his father's death. *See* Pl.'s Opp'n at 41. That contention, however, pertains to the merits of whether Plaintiff perfected his request, not to the adequacy of the search

for those documents responsive to the perfected subpart of Item 1. Thus, not having protested the adequacy of Defendant's search for records responsive to Item 1, the court grants judgment in favor of Defendant on that issue.

As to Item 2, before the court's ruling in *Goldstein I*, the IRS had determined that documents responsive to Item 2 would be encompassed within records responsive to Item 1. Rowe Decl. ¶ 12. Specifically, in response to Item 2, Defendant produced a copy of the Estate's tax return. *Id*. ¶ 11; *see also* Def.'s Second Mot., Ex. 1, ECF No. 52-3 [hereinafter Batch Decl.], ¶ 8. Now, as to Item 2, Defendant submits the declaration of Thomas Batch, a Government Information Specialist at the IRS, who is responsible for handling FOIA requests. Batch Decl. ¶ 1. Batch again explains that all documents responsive to Item 2 were encompassed by Item 1 but that, after *Goldstein I*, the IRS Office of Chief Counsel asked him to perform another search for the Estate's tax return because Plaintiff had complained in *Goldstein I* that "he was not provided the full and complete estate tax return." *See id*. ¶ 8. To locate the complete Estate tax return, Batch searched the IDRS, "an electronic system that consists of databases and operating programs . . . [which] enables [IRS] employees to have instantaneous visual access to taxpayer accounts through the use of specialized command codes." *Id*. ¶ 9. Batch goes on to recount: "I began the search by entering the Employer Identification Number (EIN) of [the Estate], which was provided in [Plaintiff's] FOIA request, into IDRS, in conjunction with the following Command Codes: INOLES (to confirm the EIN provided belongs to [the Estate]); and BMFOLI (to request a summary of any tax returns that may be recorded on IDRS under that EIN). The search provided a Document Locator Number for the estate tax return." *Id*. ¶ 10. After locating the Estate's return Document Locator Number, Batch then sent a request for a copy of the return to the Federal Records Center. *Id*. The Federal Records Center informed Batch that the return had been "checked out" by Mary Bailey,

27

an employee within the IRS' Return and Income Verification Services unit ("RAIVS"), but had not been returned. *Id*. Defendant reached out to RAIVS to inquire as to the whereabouts of the Estate tax return, but a manager in Bailey's unit informed Defendant that Bailey had retired two years prior and he was otherwise unable to locate the Estate tax return in their records. *Id*. Ultimately, Defendant was unable to locate the full and complete Estate tax return, and produced no further documents concerning Item 2.

The court concludes that Defendant's search was adequate as to Item 2. Defendant has established that, based on the overlapping nature of the requests, the same search performed to locate records in response to Item 1 would have turned up all responsive records to Item 2. As the court already has found, Plaintiff did not seriously challenge the agency's search with regard to Item 1; correspondingly, the same is true for Item 2. *See* Pl.'s Opp'n at 40–41 (making no specific argument as to the actual search for records responsive to Items 1 and 2). Moreover, upon remand after *Goldstein I*, the IRS made the extra effort to confirm that it had disclosed the Estate's tax return in its entirety. Batch searched the location most likely to contain the Estate's return—the IRDS system—using several search terms to ensure that he had located the Estate's tax records. After doing so, Batch sent a records request to the Federal Records Center using the Document Locator Number of Estate's tax return, traced the records to the RAIVS unit, inquired of the RAIVS unit about the records' whereabouts, and learned that the RAIVS unit was unable to locate any responsive records. The court finds those efforts "reasonably calculated to discover the requested documents." *SafeCard Servs.*, 926 F.2d at 1201. As a result, the court finds that Defendant's efforts to locate documents responsive to the perfected subparts of Items 1 and 2 were "adequate" within the meaning of FOIA. *See Aguiar*, 865 F.3d at 738–39.

Defendant also moves for summary judgment as to the sufficiency of its segregability analysis as to the perfected portion of Plaintiff's Item 1 request.[6] In support of that motion, Defendant puts forward the declaration of William Rowe, an attorney at the IRS' Office of Chief Counsel, Procedure & Administration, who explains that he "personally reviewed and [is] familiar with all documents at issue in this litigation and . . . attempted to make every reasonably segregable non-exempt portion of every responsive document available to" Plaintiff. Rowe Decl. ¶ 2. Rowe goes on to explain that Defendant "withheld in their entirety only those documents that fall as a whole within a FOIA exemption, or those documents wherein the portions exempt from disclosure . . . are so inextricably intertwined with non-exempt material as to be non-segregable." *Id.* Plaintiff's sole argument in response is that "it appears that Mr. Rowe has made no line-by-line review of all of the documents withheld." Pl.'s Opp'n at 44.

The court finds Defendant performed an adequate segregability analysis with respect to the perfected subpart of Item 1. Rowe's declaration describes the process by which he reviewed the documents at issue in an attempt to tease out non-exempt portions of the materials that could be disclosed, and Plaintiff points to no contrary evidence to rebut the presumption that Rowe's analysis was proper. *See Sussman*, 494 F.3d at 1117; *Mead Data Cent.*, 566 F.2d at 261. The thrust of Plaintiff's critique—that Rowe was not intimately familiar with the documents at issue— is plainly contradicted by Rowe's declaration. Rowe makes perfectly clear that he "personally reviewed" and "is familiar with *all documents* at issue." That Rowe's declaration does not contain Plaintiff's preferred phrase "line-by-line" is not enough to rebut the presumption that Defendant performed an adequate segregability review. *See Sussman*, 494 F.3d at 1117.

---

[6] As Defendant's search with respect to Item 2 did not produce any unique records not also responsive to Item 1, the court's segregability analysis as to Item 1 also applies to Item 2.

Accordingly, the court grants summary judgment in favor of Defendant as to the segregability of the records responsive to Items 1 and 2.

### 2. Item 3

In support of the adequacy of the search as to Item 3, i.e., the Goldstein Estate's fiduciary tax returns from 2000–2006, Defendant again relies on Batch's declaration. Batch explains that he searched IDRS in the same manner as Item 2, and located the Document Locator Numbers for the Estate's fiduciary returns for the requested years. Batch Decl. ¶ 11. Batch sent those Document Locator Numbers to the Federal Records Center, which searched for the returns but notified Batch that they had been destroyed in "the ordinary course pursuant to the [IRS'] Record Control Schedule." *Id.* As Batch explains, per agency policy, tax returns are eligible to be destroyed beginning "six years after the end of the processing year." *Id.* ¶ 6. Thus, the fiduciary return of the latest year sought by Plaintiff—2006—was eligible to be destroyed beginning in January 2013, *see id.* ¶ 7, six months prior to Plaintiff's FOIA request, *see* FOIA Request at 2. Having found no responsive records, the IRS produced no records in response to Item 3.

The court finds that Defendant's search, though unfruitful, was nonetheless adequate for purposes of FOIA. Batch makes clear that he identified the Estate's tax records in the IDRS, which is the place most likely to contain those records; located the Document Locator Numbers for the Estate's fiduciary returns; and requested copies of those returns from the Federal Records Center. That process was sufficient to carry out Defendant's FOIA search obligations. *See Aguiar*, 865 F.3d at 738–39. That the search ultimately did not turn up any responsive records does not render Defendant's search inadequate. *See Hodge*, 703 F.3d at 579.

As Defendant's search with respect to Item 3 did not produce any responsive records, there was no segregability analysis to conduct.

Accordingly, the court grants summary judgment in favor of Defendant with respect to Item 3.

## V. CONCLUSION AND ORDER

For the foregoing reasons, the court grants in part and denies in part Defendant's Second Motion to Dismiss and Motion for Summary Judgment, and denies Plaintiff's Cross-Motion for Summary Judgment, as follows:

1. Defendant's Motion relating to unperfected Items 5 and 7 and the unperfected parts of Items 1 and 2 is granted.

2. Defendant's Motion as to Plaintiff's Privacy Act claim is granted.

3. Defendant's Motion as to the perfected parts of Items 1 and 2 and Item 3 in full is granted.

4. Defendant's Motion as to Items 4 and 8 is denied. This matter is remanded for further consideration of those Items consistent with this Memorandum Opinion.

5. Plaintiff's Cross-Motion for Summary Judgment is denied.

The court will permit Defendant to supplement the record and renew its Motion for Summary Judgment as to claims relating to Items 4 and 8. No later than 30 days from this date, the parties shall file a Joint Status Report (1) updating the court on the events on remand, and (2) indicating whether further summary judgment briefing will be required and, if so, proposing a schedule.


Dated: September 29, 2017

Amit P. Mehta
United States District Judge